[No. 858.   Decided December 24, 1894.]

JOHN MEGRATH, *Respondent,* v. DAVID GILMORE ET AL., *Appellants.*

BUILDING CONTRACTS—CONSTRUCTION—EVIDENCE—ACCORD AND SATISFACTION—ACCEPTANCE OF CHECK.

Plaintiff brought an action upon a building contract, claiming that the terms of his agreement consisted only of his bid therefor according to certain plans and specifications and its oral acceptance by defendants. The answer set up a written agreement signed by one of the defendants, as the only contract entered into between the parties, alleging that the signing by such defendant was done by him and accepted by plaintiff as a sufficient execution of the contract, for both defendants, that such defendant was duly authorized in that behalf by his co-defendant, who adopted the instrument, that all parties acted upon it as the contract of the defendants, and that there had been a final settlement in accordance with the terms of such written contract. The reply was a general denial. The written contract provided for demurrage, that plaintiff should pay for a builder's insurance policy, and that extra work should be settled for as determined by the architect, and that payments should be made upon the architect's certificate. The plaintiff claimed $6,653 for extras and refused to allow anything for demurrage, and insurance paid by defendants. The architect allowed, and it was conceded by defendants, that the extras were worth $5,000, and the defendants also claimed on account of demurrage and insurance, $6,479.07. The evidence showed that the terms of the written contract had been followed by the parties till the completion of the building, and that when the question of settlement was up plaintiff did not deny the existence of such contract as a binding agreement, but complained that he was being unfairly treated under the contract. *Held,* that the verdict of the jury, which, from its amount, was plainly based upon the assumption that the terms of the agreement consisted of

nothing but the plaintiff's bid and the oral acceptance of it, should be set aside as against the weight of evidence.

Where one claims that he had a contract for a certain purpose, some of whose terms were left to be stated in a writing, a paper afterward signed by him with a view to setting forth such contract, but which was not consummated as a valid agreement, must be considered as the highest evidence of what the terms of his contract were.

Whether the receiving of a check for the amount of a disputed claim is an acceptance of it as a full settlement, although the check recites that it is, is a question proper to be submitted to the jury, when there is a controversy as to the facts.

*Appeal from Superior Court, King County.*

*Burke, Shepard & Woods,* for appellants

*Stratton, Lewis & Gilman* and *Carr & Preston,* for respondent.

The opinion of the court was delivered by

STILES, J.—David Gilmore and William H. Kirkman, in 1889, caused plans and specifications to be prepared for a building to be erected on their joint property in the city of Seattle, and thereupon invited bids from contractors for the erection of the building. Two bids were received ; one, that of respondent, for $98,000, and another, that of a third party for $96,840. Gilmore and Kirkman desired to favor respondent, and proposed that they would accept his bid, but that, as they did not wish to appear to reflect on the lower bidder, in any way, they would make their principal contract for the building, which was to be in writing, at $96,000, and give respondent a separate obligation for $2,000. Thus far the transaction occurred between Gilmore and respondent only, Kirkman residing in Walla Walla and not being present. Gilmore had full authority from Kirkman to make any contract he saw fit. Within a day or two after the agreement as to the bid the architect who had prepared the plans and specifications filled up one of his blank contracts, in duplicate, with the names of respondent and John Collins, as parties of the first part, and Gilmore and Kirkman

parties of the second part, and otherwise prepared it for sign-
ing.   Respondent and Gilmore met at the architect's office
to sign the contract, which was dated March 8, 1889, on
that day, whereupon respondent stated that one Redward
was to join him in the contract, and his name was inserted
as a party of the first part.   Respondent, Collins and Gil-
more signed both copies of the instrument, but Redward
refused to sign, and nothing further was said about him.
Some question was made as to whether Kirkman's name
should be appended, but for some reason it was omitted.
One side of this case maintains that his signature was never
waived, while the other asserts that it was then and there
agreed, upon the suggestion of the architect, that it was not
necessary that Kirkman should sign, because Gilmore had
full authority from him to act for them both in all matters
pertaining to the proposed building.   Respondent took one
of the copies and the architect retained the other for Gil-
more.   Collins was merely a surety for respondent, as it is
now made to appear.

This writing contained the usual articles found in such
agreements, twelve in number, each set forth with much
detail.   The date for the completion of the building was
fixed at October 10, 1889, for the lower portion, and at
November 10, for the upper portion, with a provision for
demurrage at the rate of $25 per day for each uncompleted
portion beyond the dates named.   Provisions were made
that the architect should be the sole arbiter of certain de-
scribed matters, should they come into dispute, and in case
of any other dispute it should be settled by another method
of arbitration provided for.

Extra work was to be settled for as determined by the
architect, if satisfactory to both parties, but otherwise by
the second method of arbitration.   The contractor was re-
quired to procure a builder's insurance policy for the benefit
of Gilmore and Kirkman as security for such money as they
might advance. Payments were to be made every two weeks
after the commencement of work, to the extent of 90 per
cent. of the work performed, upon architect's certificates :

final payment within ninety days after completion. The time of completion was not to be extended by reason of extra work ordered. The contract price was stated to be $96,000. Work on the building was at once commenced, and proceeded with to completion, but not within the times mentioned above, so that there arose a question as to demurrage. Extra work to the amount of several thousand dollars was done, and a small amount of work was omitted. Gilmore and Kirkman themselves procured and paid for the insurance. Upon an attempt at a settlement a serious dispute arose. Ninety-eight thousand dollars was conceded to have been the real contract price, and of this sum $86,400 had been paid, leaving a balance of $11,600. The respondent claimed $6,653 for extras, and demanded this sum in addition to the balance of the contract price, but refused to allow anything for demurrage, insurance, or uncompleted work. The architect estimated the extras at only $4,497.21, and the owners claimed for demurrage $6,050; insurance $429.07; uncompleted work $257.50. At Gilmore's suggestion the extras were raised to $5,000, but he refused to settle except upon the terms of the contract, which he claimed justified the other demands made by him. Out of this contention there resulted a final certificate made by the architect showing a statement of the account, on the basis proposed by Gilmore, and a balance due respondent of $9,863.43. This certificate was delivered to respondent and by him carried and delivered to Gilmore, who forthwith gave him a bank check for the amount, containing on its face, after the amount, the following: "which is payment in full for all claims in the construction of the Gilmore & Kirkman building." The check was paid in due course, April 2, 1890.

In February, 1891, respondent commenced this action, alleging a contract entered into about March 1, 1889, between himself and Gilmore and Kirkman for the erection of the building, in accordance with the plans and specifications prepared by the architect named in the writing referred to for the sum of $98,000; the facts constituting his claim for extra work, in the sum of $6,653; and that he had been paid

only $96,263. Judgment was demanded in the sum of $8,390. No reference was made to the purported final settlement.

The answer pleaded the writing referred to, as the only contract ever entered into between the parties ; the facts constituting the opposing claims of the defendants as above noted ; and the alleged final settlement as an accord and satisfaction. There was also an allegation that the signing of the writing by Gilmore was done by him and was accepted by plaintiff as a sufficient execution of the contract, that Gilmore was duly authorized in that behalf by Kirkman, who adopted the instrument, and that all parties acted upon it as the contract of Gilmore and Kirkman.

The reply was a general denial of the new matter in the answer, except that there was an admission that $259.50 should be credited for uncompleted work.

It will thus be seen that the theory of the plaintiff's action was an express contract for the erection of the building for the sum of $98,000, ignoring the written agreement (because it was not signed by Kirkman) and the alleged final settlement. The defense maintained the integrity of the written contract, either by sufficient execution, or through subsequent assent by the conduct of the parties, and the finality of the settlement. Judgment was for the full amount demanded in the complaint.

The errors alleged relate wholly to the denial of the motion for a non-suit, and the motion for a new trial on the ground that the verdict was against the law and the evidence, and to the matter of charging the jury,

I. The respondent having rejected the writing as a contract, his first duty in the case was to establish in his favor an express contract binding upon Gilmore and Kirkman; failing in this the action must result against him, since he could not be permitted to recover upon *quantum meruit*, he having neither pleaded nor given evidence in support of such a cause of action. His own testimony attempted to limit all the negotiations for the erection of the building, outside of the signing of the writing, to his putting in a bid, and being

told by Gilmore that it was his job.  It was possible to make a contract of this kind for a work of this magnitude in this way, and if nothing further had been said or done it might now be held that there was a contract for the erection of the building according to the plans and specifications upon which the bid was predicated, for the sum of $98,000.  But this contract would have been absolutely without other terms except such as the law would imply, or the parties might agree upon by their words or conduct afterwards.  There would have been no time for completion except that dictated by reason ; no right on the part of the owners to superintend ; no right on their part to change the plan of the building in any respect ; and no right in either party to have disputes settled by arbitration.  Probably the least satisfactory term of this contract to the respondent would have been that he would have had no right, upon architect's certificates, to demand and receive partial payments every two weeks, amounting to ninety per cent. of the finished work, but would have had to await payment of the gross sum on completion of the whole work.  Respondent testified, however, that it was the understanding that there were to be two written contracts—one for $96,000, and the other for $2,000.  He supposed that the writing spoken of was the principal contract and took possession of one copy of it as such.  Afterwards he asked Gilmore for the other one, and it was promised him, but he did not get it.  Who was to be the architect, when the building was to be completed, and what were to be the terms of payment, were all left to be fixed up in the written agreement.  He supposed this ; it was customary.  The written agreement was signed by respondent, after it had been carefully read by him.

Upon these facts we think it impossible to conclude otherwise than that the utmost that can be said of the bid and all other matters preceding the signing, is that they constituted an agreement for a contract and not a contract for the erection of the building.  But if this be not so, then, inasmuch as respondent asserts that he had a contract, some of whose terms were left to be stated in a writing, this paper

which he signed must be considered as the highest evidence of what those terms consisted. *Goff v. Pacific Coast Steamship Co.*, 9 Wash. 386 (37 Pac. 418). At this point it must be remembered that this case is unlike those cases, some of which have been cited to us, where the action was upon an alleged contract, and the defense was no sufficient signature of the instrument intended to evidence a contract, or where the suit was upon *quantum meruit* and the answer set up an express contract. Here both parties allege a contract, and the material subject of inquiry is as to what its terms were. By his testimony as to what it was agreed should be in writing, respondent himself supplies part of the necessary information, and by his action the rest is made clear. He submitted to the control of the architect named in the writing as the person who was to have superintendence of the building. He received a number of partial certificates for sums due, "as per contract dated March 8," which was the date of the writing; and the sum of these was exactly ninety per cent. of the whole price named in the writing, that being the percentage therein agreed upon as the proportion to be paid as the work progressed. Every payment made to him was by check in favor of "Megrath & Collins," his explanation of this fact being that Collins was his bondsman; but, unless the writing evidenced the contract, Collins was not his bondsman, there was no bond at all, and no reason for accepting checks payable in that manner. He accepted the appraisement of the architect of the extra work without objection to his assumption of authority in the matter. And, finally, when the question of settlement was up, he at no time denied the existence of the contract as a binding agreement, although all of Gilmore's claims were based upon it, and it was constantly referred to as his justification for them. He objected to the claim for insurance, not because he had not made a contract for it, but because he claimed that it had been intended that Redward alone should furnish it, respondent expecting to do the mason work only, which would not burn, and Redward the woodwork which would burn. So, as to the demurrage, he never suggested that he

had not contracted to have the building completed at the dates named in the writing, and that he was not bound to allow rebates in the sums named therein for each day's overtime; but he asserted that the delays had been caused, in the first place, by the appellants' failing to have the ground ready; secondly, because the trenches for the foundation were insufficient; and, thirdly, because the Seattle fire so disarranged things that it was impossible for him to proceed faster. His complaints were entirely to the effect that he was being unfairly and unjustly treated *under the contract*, and not that he was being illegally treated because there was no contract covering the points in dispute; and upon being asked what was said at the last meeting before the settlement, he answered: "I wanted to arbitrate as his agreement called for—if any question, any dispute, it would be left to arbitration. I called his attention to the fact that if there was any question in that contract that called for arbitration, I wanted him to appoint his man and I appoint mine, and they two should choose the third." But outside of the writing there was no basis for arbitration.

The verdict of the jury, from its amount, was plainly based upon the assumption that the terms of the agreement consisted of nothing but the respondent's bid, and the oral acceptance of it, which was against the clear weight of evidence furnished by the respondent himself, as well as against the numerous appropriate instructions of the court, and it should have been promptly set aside, and a new trial granted for that reason. It was not within the province of the jury to ignore admitted facts and base its finding upon the mere claim of the respondent set up for the first time after the full execution of his work. We are of opinion, however, that the case was not one which called for the granting of a non-suit at the close of plaintiff's evidence, as the most, and most important, of the respondent's admissions were made upon the rebuttal, after the writing had been admitted in evidence.

2. The particulars concerning the alleged settlement have been stated as far as the undisputed facts go. But the

respondent's position is that notwithstanding the formalities of the architect's final certificate and the contents of the check for the balance therein stated to be due, he did not, in fact, accept this payment as a satisfaction of his claims, and it was not understood to be so accepted by Gilmore. He says that Gilmore was punctilious about settling on the strict terms of the contract, and claimed the demurrage, which the respondent refused. But Gilmore said : "I will only settle on the strict terms of this contract. Then I can turn right around and pay you my half of this money, and Kirkman can do as he likes with his half." Still respondent refused ; but afterwards the architect, out of Gilmore's presence, assured him that to avoid a long law suit he would better fix it up that way ; that Gilmore was merely stubborn but would do him no wrong ; and that he would get every dollar of his money. Upon that he told the architect to go ahead, and received the certificate and check. The architect seems to have confirmed respondent's testimony on these points to the extent that he gave him to understand that the acceptance of the final certificate would not preclude him from making a further claim. Gilmore, of course, denied any such transaction.

These facts, under the authorities, justified the court in submitting to the jury, by its third instruction, the question whether Gilmore gave the check and the respondent accepted it as a full settlement of their matters of difference, or not. *Frick v. Algeier*, 87 Ind. 255 ; *Fire Ins. Ass'n. v. Wickham*, 141 U. S. 564 (12 Sup. Ct. 84); *Hart v. Boller*, 15 Serg. & R. 162 (16 Am. Dec. 536); *Stone v. Miller*, 16 Pa. St. 450 ; *Hardman v. Bellhouse*, 9 Mees. & W. 596.

Upon the whole case we are of the opinion that the material questions which should have been submitted to the jury, under the evidence, were, first : Was there an agreement to make a full settlement? second : If there was no settlement, what, if any, demurrage at the contract rates, ought to be charged to the respondent? Concerning the extra work there should have been no submission, since the evidence clearly showed a reference of that matter to the architect

under the terms of the contract, a finding by him that the value of the extras was $4,497.21, and an acceptance of that award with the added gratuity suggested by Gilmore, raising the amount to $5,000. So, also, the insurance, being covered by the contract should not have been submitted.

The judgment is reversed and remanded for a new trial in accordance with this opinion.

DUNBAR, C. J., and HOYT, and ANDERS, JJ., concur.

SCOTT, J., concurs in the result.