[No. 12216. Department One. February 9, 1916.]

# LOUIS OLSON, *Respondent*, v. SELDOVIA SALMON COMPANY, *Appellant*.[1]

ABATEMENT AND REVIVAL — PRINCIPAL AND SURETY — SUPERSEDEAS BOND—DEATH OF SURETY. The liability of a surety upon a supersedeas bond is continued after his death, by Rem. & Bal. Code, §§ 193, 236, 967, providing that in certain cases where actions shall be prosecuted against the party if living, the same may be prosecuted against his representatives, which statute abrogates the common law rule that the death of a surety jointly liable with the principal ends the obligation as to both past and future defaults.

PRINCIPAL AND SURETY—DISCHARGE OF SURETY—DEATH—APPEAL—SUPERSEDEAS BOND. The death of a surety upon a supersedeas bond does not revoke the contract of suretyship as to costs subsequently arising; since the obligation was one that the surety could not withdraw from upon notice.

SAME—REMEDIES OF CREDITOR—DEATH OF SURETY—EXHAUSTION OF PRINCIPAL LIABILITY—APPEAL—SUPERSEDEAS BOND. Since a surety upon a supersedeas bond is liable upon the bond in the first instance as a principal obligor, the representatives of a deceased surety cannot demand that the obligee first exhaust his remedies against the principal debtor and a living co-surety.

APPEAL AND ERROR — SUPERSEDEAS BOND — SUMMARY JUDGMENT—DEATH OF SURETY. The death of a surety upon a supersedeas bond, upon which the surety was liable as a principal debtor, does not affect the right of the obligee to the summary judgment authorized by Rem. & Bal. Code, § 1739, upon affirmance, against both the appellant and his sureties or representatives, for the amount of the judgment.

ELECTION OF REMEDIES—SUPERSEDEAS BOND—ABATEMENT AND REVIVAL—ANOTHER ACTION PENDING. The presentation of a contingent claim, pending appeal, against the estate of a surety upon a supersedeas bond on appeal and the commencement of an action thereon, does not constitute an election of remedies which would prevent

[1]Reported in 154 Pac. 1107.

entry of summary judgment on the bond by the supreme court on affirmance of the judgment; since the supreme court first acquired jurisdiction by the appeal, and another action pending is not a good plea in bar of the primary action.

Motion filed in the supreme court November 30, 1915, for an order directing the substitution of the executor and executrix in lieu of a deceased surety on a supersedeas bond, and for the entry of a summary judgment on the bond against them and the principal thereon. Granted.

*Vanderveer & Cummings*, for appellant.

*Arctander & Jacobsen*, for respondent.

FULLERTON, J.—On January 23, 1914, Louis Olson recovered a judgment against the Seldovia Salmon Company, a corporation, for the sum of $2,500, and costs of action taxed at $83.40. The corporation appealed from the judgment, giving a supersedeas bond with one Julius Redelsheimer and one S. S. Loeb, as sureties. While the cause was pending in this court, Julius Redelsheimer died, leaving a nonintervention will in which he named his wife, Glorivina Redelsheimer, and Benjamin Moyses, respectively, as executrix and executor of his estate. On November 19, 1915, this court delivered its opinion directing that the judgment be affirmed. 88 Wash. 225, 152 Pac. 1033. Thereafter, and before judgment was entered in this court on the order of affirmance, the respondent Olson filed his affidavit suggesting the death of Redelsheimer, and moved in this court, on notice, for a summary judgment on the bond against the appellant, the surety Loeb, and Glorivina Redelsheimer and Benjamin Moyses, as executrix and executor respectively of the estate of Julius Redelsheimer, deceased. The motion is resisted by the executrix' and executor on various grounds. These we will notice in their order.

If we have correctly gathered the first objection, it is that the right of action on the bond did not survive the death of Julius Redelsheimer, first, because of the joint nature of the

obligation entered into; and, second, because his death was a revocation of his contract of suretyship operative as to any obligation arising subsequent thereto and that this obligation did so arise. It was the rule of the common law that, when a surety became jointly liable with his principal, the death of the surety ended the obligation as to both past and future defaults. This, however, was merely an application of the rule which prevailed at common law as to all joint obligations, and was abrogated by our statutes relating to the liability of joint obligors. Rem. & Bal. Code, §§ 193, 236, 967 (P. C. 81 §§ 35, 165, 1827). This question was before us in *Donnerberg v. Oppenheimer*, 15 Wash. 290, 46 Pac. 254. Noticing the objection, we said:

"It is next urged that when the surety dies and the principal survives, that the surety's estate is absolutely discharged, and the survivor only is liable. But this is not so under our statutes (Code Proc., §§ 704, 1042), which provide that in certain cases, which would include this one, where actions could have been maintained against the party if living, that the same may be prosecuted against his representatives."

To the same effect is *Megrath v. Gilmore*, 15 Wash. 558, 46 Pac. 1032, where the following language was used:

"This case was before this court upon a former occasion (10 Wash. 339, 39 Pac. 131), to which reference can be had for a statement of the nature of the action. Pending the former appeal, Kirkman died, and it was stipulated in this court that the executors of his will might be substituted as defendants in his stead. When the second trial was begun the defendants moved to dismiss the action as against Kirkman's executors on the ground that there is no survival of liability against the representatives of a deceased joint debtor. This point has been passed upon by this court contrary to appellants' contention since his brief herein was filed. *Donnerberg v. Oppenheimer*, ante, p. 290 (46 Pac. 254)."

The rule invoked by the second part of the objection is limited to cases where the guarantor or surety might, if living,

have revoked his liability by giving notice, of which the obligation assumed in the present instance is not such.   The governing principles are clearly stated by Circuit Judge Taft, in *Fewlass v. Keeshan*, 88 Fed. 573, in the following language:

"The first point made in this court by the appellants is that the cost bond does not bind the estate of the surety for any costs accruing after his death.   The rule as to the obligation of a guarantor in respect to transactions occurring after his death is that the obligation is not affected by his death if the contract of guaranty was one from which he might not withdraw. upon notice, but that, if he could have done so, then his death will be given the effect of a notice of withdrawal, at least from the time when the knowledge of the same has been brought home to the obligee.   The former proposition is sustained by the cases of *Lloyd v. Harper*, 16 Ch. Div. 290; *Calvert v. Gordon*, 3 Man. & R. 124; *Green v. Young*, 8 Me. 14; *Moore v. Wallis*, 18 Ala. 458, and *Voris v. State*, 47 Ind. 345.   The alternative proposition is illustrated in the cases of *Jordan v. Dobbins*, 122 Mass. 168; *Hyland v. Habich*, 150 Mass. 112, 22 N. E. 765; *Coulthart v. Clementson*, 5 Q. B. Div. 42, and *Gay v. Ward*, 67 Conn. 147, 34 Atl. 1025.   A court cannot release a surety upon a cost bond without the consent of the party for whose benefit the security has been given.   *Holder v. Jones*, 29 N. C. 191; *Standard Publishing Co. v. Bartlett*, 5 Wkly. Law Bul. 501.   This feature of the obligation of a cost bond places it in the category of irrevocable guaranties, the obligations of which continue according to their terms, without regard to the death of the guarantor."

To the same effect is the case of *Estate of Rapp v. Phoenix Ins. Co.*, 113 Ill. 390, 55 Am. Rep. 427, where it is said:

"All voluntary bonds executed for a lawful purpose, like statutory bonds, derive whatever efficacy or binding force they have, from the positive law of the state, and in this respect there is no difference in the two classes of bonds.   To hold that the estate of a surety on an ordinary trustee's bond is absolutely discharged from all future liability upon the death of the surety, on the ground that his death is *per se* an extinguishment of the bond, would certainly be a startling

proposition to come from this or any other court of final resort; and yet to decide this case in conformity with appellant's theory would be, in legal effect, to assert, as we understand it, that very proposition. We unhesitatingly decline, both upon reason and authority, to give our adhesion to any such a doctrine."

A further objection is that the judgment creditor must exhaust his remedies against the principal debtor and the living surety before he can proceed against the representative of the estate of the deceased surety; and that, in any event, a summary judgment cannot be entered against such representatives in this court, but they must be proceeded against by an action on the bond in a court of the first instance. But it is clear that, if the decedent's estate is liable at all upon the bond, it is liable in the first instance as a principal obligor; the rule being that, as between the obligors and the obligee, all of the obligors are principal debtors, though as between themselves they may have the rights and remedies resulting from the relation of principal and surety. *Babbitt v. Finn*, 101 U. S. 7. See, also, our own case of *Long Bell Lumber Co. v. Gaston*, 78 Wash. 598, 139 Pac. 641. Since, therefore, the estate of a deceased surety is liable to the obligee as a principal debtor, its representatives cannot claim as against him the remedies which might be applicable between the estate and its immediate principal.

Nor do we think the objection against a summary judgment well taken. The statute (Rem. & Bal. Code, § 1739; P. C. 81 § 1231) provides that, upon the affirmance of a judgment on appeal for the payment of money, the supreme court shall render judgment against both the appellant and his sureties on the appeal bond for the amount of the judgment appealed from, in case the bond is conditioned so as to support such a judgment, and for damages and costs on the appeal. The judgment below was a judgment for the payment of money. The bond was in the language of the statute relating to supersedeas bonds. It is, therefore, conditioned

to support a judgment in this court against the sureties, and, unless the fact of the death of the surety changes the rule of the statute, there is a clear right to enter judgment on the bond against the representatives of the deceased surety. For the reason that the estate is a principal debtor, we are constrained to hold that the fact does not change the rule, and that the respondent has the right to such a judgment.

On the death of Redelsheimer, the respondent presented to the representatives of his estate a contingent claim based upon his liability on the supersedeas bond, and, on the claim being rejected, brought an action thereon in the superior court. It is objected that this is in the nature of an election of remedies and bars the respondent from insisting on a judgment in this court against the representatives of the deceased surety. But we think the objection not well taken. The appeal vested this court with jurisdiction to direct the character of the judgment to be entered in the action, and the respondent has the right to pursue his action here to its final termination. Under the rule that a person may not pursue two remedies for the same wrong, it might be a defense to the action in the other court that an action for the same recovery was pending here, but the converse of the rule would not be true. Another action pending is a plea to a second action for the same cause of action, but is not a plea to the primary action. 1 C. J. 57; *Westmoreland Co. v. Howell*, 62 Wash. 146, 113 Pac. 281.

The motion of the respondent is granted.

MORRIS, C. J., MOUNT, ELLIS, and CHADWICK, JJ., concur.