EBEN D. JORDAN & others *vs.* ELIZABETH DOBBINS, administratrix.

Suffolk.    November 23, 1876. — March 1, 1877.

A guaranty of the payment by another of goods to be sold, not founded upon any present consideration passing to the guarantor, and providing that it should continue until written notice should be given of its termination, is revoked by the death of the guarantor.

CONTRACT upon the following guaranty : " For value received, the receipt whereof is hereby acknowledged, the undersigned does hereby guaranty to Jordan, Marsh & Co. the prompt

———

payment by George E. Moore to Jordan, Marsh & Co., at maturity, of all sums of money and debts which he may hereafter owe Jordan, Marsh & Co. for merchandise, which they may from time to time sell to him, whether such debts be on book account, by note, draft or otherwise, and also any and all renewals of any such debt. The undersigned shall not be compelled to pay on this guaranty a sum exceeding $1000, but this guaranty shall be a continuing guaranty, and apply to and be available to said Jordan, Marsh & Co., for all sales of merchandise they may make to said George E. Moore until written notice shall have been given by the undersigned to said Jordan, Marsh & Co. and received by them, that it shall not apply to future purchases. Notice of the acceptance of this guaranty and of sales under the same, and demand upon said George E. Moore for payment, and notice to me of non-payment, is hereby waived. In witness whereof I, the undersigned, have hereunto set my hand and seal this twenty-eighth day of February, A. D. 1873. William Dobbins. (Seal.)" Annexed to the declaration was an account of goods sold to Moore.

The case was submitted to the Superior Court, and, after judgment for the plaintiffs, to this court, on appeal, on an agreed statement of facts in substance as follows :

The plaintiffs are partners under the firm name of Jordan, Marsh & Co., and the defendant is the duly appointed administratrix of the estate of William Dobbins.

William Dobbins, on February 28, 1873, executed and delivered to the plaintiffs the above written contract of guaranty. The plaintiffs thereafter, relying on this contract, sold to said Moore the goods mentioned in the account annexed to the declaration, at the times and for the prices given in said account, all of the goods having been sold and delivered to Moore between January 16 and May 28, 1874. All the amounts claimed were due from Moore, and payment was duly demanded of him and of the defendant before the date of the writ. Other goods had been sold by the plaintiffs to Moore between the date of the guaranty and the first date mentioned in the account, but these had been paid for.

William Dobbins died on August 6, 1873, and the defendant was appointed administratrix of his estate on September 2, 1873.

The plaintiffs had no notice of his death until after the last of the goods mentioned in the account had been sold to Moore.

If upon these facts the defendant was liable, judgment was to be entered for the plaintiffs for the amount claimed; otherwise, judgment for the defendant.

*M. Storey,* for the plaintiffs.

*D. S. Richardson & G. F. Richardson,* for the defendant.

MORTON, J.   An agreement to guarantee the payment by another of goods to be sold in the future, not founded upon any present consideration passing to the guarantor, is a contract of a peculiar character.   Until it is acted upon, it imposes no obligation and creates no liability of the guarantor.   After it is acted upon, the sale of the goods upon the credit of the guaranty is the only consideration for the conditional promise of the guarantor to pay for them.

The agreement which the guarantor makes with the person receiving the guaranty is not that I now become liable to you for anything, but that if you sell goods to a third person, I will then become liable to pay for them if such third person does not. It is of the nature of an authority to sell goods upon the credit of the guarantor, rather than of a contract which cannot be rescinded except by mutual consent.   Thus such a guaranty is revocable by the guarantor at any time before it is acted upon.

In *Offord* v. *Davies,* 12 C. B. (N. S.) 748, the guaranty was of the due payment for the space of twelve months of bills to be discounted, and the court held that the guarantor might revoke it at any time within the twelve months, and that the plaintiff could not recover for bills discounted after such revocation. The ground of the decision was that the defendant's promise by 'tself created no obligation, but was in the nature of a proposal which might be revoked at any time before it was acted on.

Such being the nature of a guaranty, we are of opinion that the death of the guarantor operates as a revocation of it, and that the person holding it cannot recover against his executor or administrator for goods sold after the death.   Death terminates the power of the deceased to act, and revokes any authority or license he may have given, if it has not been executed or acted upon.   His estate is held upon any contract upon which a liability exists at the time of his death, although it may depend upon

future contingencies. But it is not held for a liability which is created after his death, by the exercise of a power or authority which he might at any time revoke.

Applying these principles to the case at bar, it follows that the defendant is entitled to judgment. The guaranty is carefully drawn, but it is in its nature nothing more than a simple guaranty for a proposed sale of goods. The provision, that it shall continue until written notice is given by the guarantor that it shall not apply to future purchases, affects the mode in which the guarantor might exercise his right to revoke it, but it cannot prevent its revocation by his death. The fact that the instrument is under seal cannot change its nature or construction. No liability existed under it against the guarantor at the time of his death, but the goods for which the plaintiffs seek to recover were all sold afterwards.

We are not impressed by the plaintiff's argument that it is inequitable to throw the loss upon them. It is no hardship to require traders, whose business it is to deal in goods, to exercise diligence so far as to ascertain whether a person upon whose credit they are selling is living.

The decision in *Bradbury* v. *Morgan*, 1 H. & C. 249, upon which the plaintiffs rely, was rested upon reasoning which appears to us to be unsatisfactory and inconsistent with the opinion of the same court a year before, in *Westhead* v. *Sproson*, 6 H. & N. 728, and with the decision in *Offord* v. *Davies, ubi supra*, at the argument of which *Bradbury* v. *Morgan* was cited; and it has not since been treated as settling the law of England. *Harriss* v. *Fawcett*, L. R. 15 Eq. 311, and L. R. 8 Ch. 866. The reasons of the similar decision in *Bank of South Carolina* v. *Knotts* 10 Rich. 543, are open to the same objections.

*Judgment for the defendant.*