ESTATE OF MICHAEL RAPP

*v.*

THE PHŒNIX INSURANCE COMPANY.

*Filed at Springfield March 30, 1885.*

1. CONSIDERATION—*of its sufficiency—as to a bond of an agent to his principal.* A bond given by an agent of an insurance company, with surety, in the penal sum of $1000, conditioned that the agent shall promptly pay to the company moneys received by him from time to time, and well and truly perform all the duties of his agency as long as he officiates as such, and shall deliver to his successor, or to such person as the company may direct, all property which he may receive and hold when his agency terminates, discloses on its face a sufficient consideration to support the undertaking of the obligors so long as the agency continues, and is not similar to a guaranty on the part of the surety to be responsible for future advances. Such an obligation becomes binding immediately upon its execution and delivery.

2. SURETY—*suretyship as to bond given by an agent to his principal— distinguished from an ordinary guaranty as to future advances.* The undertaking of a surety in a bond given by his principal for the faithful discharge of his duties as agent of an insurance company, is distinguishable from that of a guaranty of payment of future advances. In the latter, the only consideration to uphold the guarantor's undertaking is an advance or credit given the party for whom the guaranty is given, and no liability arises until such an advance is made, and the undertaking may be revoked at any time before advances are made on its faith; while in the former, the appointment of the agent with power to act and transact business for the obligee, is a present consideration, which renders the surety's undertaking binding immediately.

3. SAME—*whether contract terminated by the death of the surety, as to subsequent dealings.* The obligation of the surety in a bond given by a party to procure his appointment as an agent of an insurance company, conditioned for the faithful discharge of his duties as agent, and the payment of all moneys of the principal coming to his hands, and the delivery of all property of his principal he may have when his agency ceases, is not terminated by the death of the surety as to any moneys or property that may come into the hands of such agent after such death, but may be enforced against the personal representative of the surety's estate.

4. SAME—*obligee retaining dishonest agent—effect on liability of surety on such agent's bond.* Where the employer of a clerk or other agent takes from another a bond of indemnity, or an undertaking to become responsible for the honesty and fidelity of such clerk or agent in his service, the employer impliedly stipulates that he will not knowingly retain such clerk or

agent in his service after a breach of the guaranty justifying his discharge, and if he retains him after such breach, the surety will not thereafter be liable.

5. So where an agent of an insurance company, who had given bond, with personal security, for the faithful discharge of his duty to his employers, and such agent was required to make monthly reports and settlements, and pay over any moneys in his hands, and he was still retained in the service after notice of his default and failure to pay over moneys in his hands, it was *held,* that the estate of the surety was discharged from liability as to any subsequent default and delinquency on the part of such agent.

6. AGENCY—*terminated by death of principal.* The death of the principal is *per se* a revocation of the agent's authority, and hence all contracts or other engagements subsequently entered into by the agent are absolutely void as to the legal representatives of the principal, notwithstanding the death of the principal may have been unknown at the time such contracts or engagements were entered into.

7. ACTION—*death of one of the parties to a contract—whether right of action survives.* All contracts entered into by one, not of a personal character, are equally binding upon him, and his legal representatives after his death. The latter are held liable on all contracts of the former which are broken in his lifetime, and, with the exception of contracts in which personal taste or skill is required, on all such contracts broken after his death; and his legal representatives may sue on such contracts, although they are not named therein.

8. SAME—*former case distinguished.* The case of *Pratt* v. *Trustees,* 93 Ill. 475, is not to be regarded as holding a different doctrine on this subject. That case holds that a mere voluntary proposition that may be withdrawn at any time before acceptance, is revoked by the death of the person making it, before acceptance.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Morgan county; the Hon. CYRUS EPLER, Judge, presiding.

This is an appeal from the Appellate Court for the Third District, affirming an order of the circuit court of Morgan county, allowing a claim of $188.90 against the estate of M. Rapp, deceased, in favor of the Phœnix Insurance Company. The executors of Rapp bring the case here, on a certificate of the judges of the Appellate Court that it involves important questions of law which should be passed upon by this court.

The foundation of the claim thus allowed is the following bond:

"Know all men by these presents, that I, Joseph B. Booker and Albert H. Brace, of the town of Jacksonville, county of Morgan, and State of Illinois, as principals, and M. Rapp, of the town of Jacksonville, county of Morgan, and State of Illinois, as surety, are firmly held and bound to the Phœnix Insurance Company, a corporation incorporated by the legislature of Connecticut, and located at Hartford, and State of Connecticut, in the sum of $1000, to be paid unto their certain attorneys or assigns, to which payment, well and truly to be made, we jointly and severally bind ourselves, our heirs, executors and administrators, firmly to these presents. ·

"Sealed with our seals, and subscribed at Jacksonville, this 28th day of December, 1880.

"The condition of this obligation is such, that whereas the above named J. B. Booker & Co. has been duly appointed by the directors of the aforesaid company their agents for the city of Jacksonville and its vicinity, State of Illinois, during their pleasure, and by reason whereof, and as such agent, he will receive into his hands and possession divers sums of money, policies, chattels and other effects, the property of said company, and is bound to keep true and accurate accounts of said property, and of his receipts and disbursements, and to account for and pay over the same to the said company when demanded, and comply with all instructions furnished him from the office of said company, or from H. M. Magill, general agent, at Cincinnati, Ohio,—

"Now, therefore, if the said J. B. Booker & Co. shall promptly pay to said company the amounts received from time to time, and shall well and truly perform all and singular the duties aforesaid, for and during the time he officiates as said agent, and shall deliver all the property which he may receive and hold as such agent, to his successor in office,

or to such other person as the company or its authorized officers may direct, then this obligation shall be null and void, otherwise to remain in full force and virtue.

JOSEPH B. BOOKER, [Seal.]
ALBERT H. BRACE, [Seal.]
M. RAPP. [Seal.]"

The remaining facts are embodied in a stipulation between the parties, which is as follows: That appellee appointed J. B. Booker & Co. its agents, and by the contract of appointment said agents were to make with appellee a full settlement of each month's business at the end of each and every month while they should remain appellee's agents; that said agents were not appointed for any specified time; that M. Rapp signed the bond in evidence; that M. Rapp died about the 10th of March, 1882; that notice of the death of M. Rapp was published in the newspapers in Jacksonville in the month of March, 1882; that the agents of appellee had actual notice of the death of M. Rapp at the time of his death; that said agents faithfully made their monthly settlements with appellee for ten months after the death of M. Rapp, and paid appellee all that was due it up to January 1, 1883; that said agents failed to make a settlement with appellee for the month of January, 1883, and also failed to make a settlement for the month of February, 1883; that appellee did not notify the executors of M. Rapp of the failure of said agents to make the January, 1883, settlement, until after the failure to make the February settlement; that the claim filed shows correctly the sums received by said agents in the months of January and February, 1883, which they failed to pay over. The entire deficit of the agents was $260. The court charged the estate of Rapp with the default for January, which, as already appears, amounted to $188.90, but refused to allow the one for February, and appellee has assigned as a cross-error the ruling of the court in rejecting the latter claim.

Mr. JOHN A. BELLATTI, for the appellant, cited the following authorities as to the nature of the undertaking, to show that it ceased on the death of the surety:   *Harris* v. *Fawcett,* 15 Law Rep. Eq. C. 311; *Jordan* v. *Dobbins,* 122 Mass. 168; *Jendevine* v. *Rose,* 36 Mich. 54; *Pratt* v. *Trustees,* 93 Ill. 475; 2 Williams, (Vt.) 209.

Messrs. MORRISON & WHITLOCK, for the appellee, cited *contra, Green* v. *Young,* 8 Greenlf. 14;  Brandt on Suretyship, sec. 113; *Royal Ins. Co.* v. *Davies,* 40 Iowa, 469; *Gordon* v. *Culvert,* 4 Russell, 581;  and commented on the cases of *Jordan* v. *Dobbins,* and the other cases referred to in appellant's, brief, to show they were not analogous to this case.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

It is contended by appellant that the bond in question is, in legal effect, the same as a guaranty of future advances to the extent of $1000; that it did not become binding or operative upon the makers until money or other property belonging to the company came into the hands of J. B. Booker & Co. as its agents; that money or property thus coming into their hands is to be regarded in the nature of future advances, and to be governed by the same rules of law that are applicable to such advances; that the contract being indefinite as to its duration, either party had the right to terminate it on notice; that it existed, so to speak, by the continued desire or joint will of the parties, and as this, in the nature of things, could not extend beyond their joint lives, and as Rapp could not, after his decease, terminate the contract by notice, the law itself terminated it, and hence Rapp's estate is not bound for anything that occurred after his death.   Such is the position of appellant, as we understand it.

The bond in question is something more than an ordinary contract of guaranty.   It is a joint and several contract between  Joseph H. Booker, Albert H. Brace and M. Rapp, on

the one side, and appellee on the other. The contract discloses upon its face that Booker and Brace, under the style of J. B. Booker & Co., had been appointed agents of appellee in conducting the insurance business, and that by virtue of their appointment, and the service upon which they had or were then about to enter, certain moneys, chattels and effects would come into their hands, which of itself disclosed a sufficient consideration to support the undertaking of the obligors so long as the agency continued. The contract therefore became binding immediately upon the execution of the instrument, and had a default on the part of the agents occurred in the lifetime of Rapp, there is no question but that a joint action might have been maintained on the bond against all three of the obligors. The instrument, then, was a written contract, whereby the obligors, jointly and severally, bound themselves, *their executors and administrators,* to the extent of $1000, for the faithful discharge of the duties of two of them in a certain specified business of a confidential character. Two of the obligors stipulate for their own honesty and business fidelity; the other joins in the stipulation, and also individually guarantees the same thing. It is to be observed, that, unlike an ordinary continuing guaranty, as it is claimed this is, nothing is to be done by any of the parties to the instrument to give it effect or make it binding upon them, as is always the case where the payment of future advances, merely, is guaranteed. The difference between the two cases is well illustrated by the language of the court in *Jordan et al.* v. *Dobbins,* 122 Mass. 168, cited and relied on in appellant's brief. In that case the goods sued for were sold after the guarantor's death, and the court, in holding there could be no recovery, among other things said: "An agreement to guarantee the payment by another of goods to be sold in the future, not founded upon any present consideration passing to the guarantor, is a contract of a peculiar character. Until acted upon it imposes no obligation, and

creates no liability of the guarantor. After it is acted upon, the sale of the goods upon the credit of the guaranty is the only consideration for the conditional promise of the guarantor to pay for them. It is in the nature of an authority to sell goods upon the credit of the guarantor, rather than a contract which can not be rescinded except by mutual consent. Thus, such a guaranty is revokable by the guarantor at any time before it is acted upon. Such being the nature of the guaranty, we are of opinion that the death of the guarantor operates as a revocation of it, and that the person holding it can not recover against his executor for goods sold after the death."

Without expressing any opinion for the present in respect to the conclusion reached in that case, we fully concur in the general expressions of the court with regard to the peculiar character of a continuing guaranty where it is supported by no consideration other than advances to be made at a future day, and where the party to whom the guaranty is given assumes no obligation to make such advances, as is generally the case with such guarantees. But the transaction now under consideration can hardly be said to be a guaranty of this character. Taking a common-sense business view of the matter, the giving of the bond, and its acceptance by the company, were the final acts by which Booker & Brace were clothed with authority to open an insurance office at Jacksonville in the name and on behalf of the company. And there can be no doubt but that the intrusting them with its business, and permitting them to conduct it with the public in the company's name, was a sufficient consideration, independent of the fact the instrument was under seal, to support the agreement in question. In these respects the *Dobbins case* is wholly unlike the one in hand. In this case no additional act was to be done by appellee, or any one else, to give the bond effect. Business was commenced, and continued under it for a long time, satisfactorily to all parties. Even

according to the rule applicable to continuing guarantees, strictly so-called, the bond under consideration was in full force and effect long before Rapp's death. We have looked with considerable care to see if the general principles applicable to a continuing guaranty of the kind mentioned have ever been extended to an ordinary agent's bond, as is sought to be done here, and we have wholly failed to find any authority for it, and certainly none has been cited.

Considerable space in appellant's brief is occupied in an effort to show that Rapp's liability upon the bond could have been terminated at any time before his death by his giving the company notice to that effect. Whether his liability could have been thus terminated in his lifetime, or whether his executors might in this manner have terminated it after his decease, are questions which do not directly arise on this record, as it is not pretended any such notice was given, either before or after his death. But as these questions probably have more or less bearing upon the main question in the case, presently to be stated, they may be incidentally noticed further on.

The controlling question in the case is, whether upon Rapp's death the bond in question, by mere operation of law, ceased to have any legal effect as to subsequent transactions between the company and its agents, J. B. Booker & Co. It is a familiar rule of law that requires no citation of authority for its support, that the death of the principal is *per se* a revocation of the agent's authority, and hence all contracts or other engagements subsequently entered into by the latter, on behalf of the principal, are absolutely void as to his legal representatives, and this notwithstanding the death of the principal was unknown at the time such contracts or other engagements were entered into. On the other hand, the general rule unquestionably is, that all contracts entered into by one, not of a personal character, are equally binding upon himself, and his legal representatives after his decease. This

general rule is well stated in Chitty on Contracts, (10th Am. ed.) page 101. The author says : "It is a presumption that the parties to a contract bind not only themselves, but their personal representatives. Executors, therefore, are held to be liable on all contracts of the testator which are broken in his lifetime, and, with the exception of contracts in which personal skill or taste is required, on all such contracts broken after his death ; and such parties may likewise sue on a contract, although they be not named therein." In the present case, however, Rapp, as we have already seen, expressly binds his executors and administrators, and hence no question of presumption of liability can arise, so far as Rapp's legal representatives are concerned, for if it be possible to bind them by any terms, they are certainly bound.

Appellant contends, however, as the bond is nothing more than an ordinary continuing guaranty, without limitation as to time, and could not for that reason have extended, in any event, beyond the guarantor's life, the provision expressly binding his personal representatives must have been intended to apply only to such defaults as might occur during his lifetime. For reasons already appearing, and others hereafter to be stated, we do not think this view is sound. In support of the proposition that the bond in question ceased to have any legal effect or binding force upon the death of Rapp, as to all subsequent transactions, four cases are cited and relied on, namely, *Pratt* v. *Trustees, etc.* 93 Ill. 475, *Jendevine et al.* v. *Rose et al.* 36 Mich. 54, *Harris* v. *Fawcett*, 15 Law Rep. Eq. C. 311, and *Jordan et al.* v. *Dobbins,* already referred to.

The principle applied to the *Pratt case*, and upon which it was decided, is the well recognized doctrine that a mere voluntary proposition may be withdrawn at any time before such action is taken under it as will, in law, show not only its acceptance, but also a sufficient consideration to sustain it as a contract. In every case of a mere voluntary proposition, if the party making it die before any action has been

taken under it, his death will, in law, operate as a withdrawal of the proposition,—consequently it can not be accepted or acted upon afterwards so as to bind his estate. The principle here stated, and which was applied to the *Pratt case,* we do not think has any application to this one.

*Jendevine et al.* v. *Rose et al. supra,* in some of its features is much like the case before us. In that, as in this, the action was upon a bond which, like the present case, was founded upon a sufficient present consideration, and related to a cotemporaneous contract of indefinite duration, which was subject to be abrogated by either of the parties to it, and, of course, upon such abrogation the bond itself would have become *functus officio.* Here the resemblance between the two cases ceases. The bond in that case was a guaranty of future sales; in this it is a guaranty of the honesty and fidelity of particular persons in a specified business. In that the money sought to be recovered was the price of goods sold after the obligee in the bond had been expressly notified not to make any further sales on the faith of the defendant's guaranty. In this case, neither Rapp, in his lifetime, nor his executors, after his decease, gave any such notice. It will be thus seen the two cases differ materially in a number of important particulars, so that there is no ground for the the claim that that case controls this. The actual point decided in the Michigan case is, that the surety (the obligor in the bond) had the right to terminate his liability upon it by giving notice, as he did. This certainly falls far short of sustaining the position that a liability of that character is determined by death, without such notice.

*Harris* v. *Fawcett, supra,* was a chancery proceeding. The guaranty in that case was one of future advances, wherein it was expressly provided the guaranty should continue for six months, notice in writing, *under the hand* of the guarantor, "to discontinue the same." The guarantor died, leaving as his executor the debtor on whose account the guaranty had

been given. It was known to the creditors having the guaranty, there was no personal estate to discharge the liability of the deceased upon the guaranty, nevertheless they continued to make advances to the executor, on the faith of it, after the guarantor's death. This was such a transaction between the creditors and the executor, who was acting in manifest disregard of his duty to the estate, with their knowledge, that no court of equity ought to have sustained it, and so it was held. In that case, as we have just seen, the right to terminate the contract by six months' notice was expressly reserved in the contract itself. But as the death of the guarantor rendered it impossible to give the kind of a notice provided for, namely, a notice *under the guarantor's own hand,*—a fact to which the court seems to have attached considerable importance,—it was held, as the contract was clearly not intended to continue forever, the estate of the guarantor, under the circumstances, was not bound for advances made after his death. The case, however, is not an authority for the proposition that the death of a guarantor in a case like the present is *per se* an abrogation of the contract. On the contrary, the logic of the entire reasoning of the court leads irresistibly to the opposite result. In the present case there is no provision in the contract of the obligors by which they are authorized to terminate their liability on the bond, and the duration of their liability is therein expressly declared to be during the time J. B. Booker & Co. officiate as agents of the insurance company,—so it is clear the contract in this case is essentially different from the one in that, but the reasoning in that case, as just observed, is clearly against the appellant in this.

In the case of *Jordan et al.* v. *Dobbins, supra,* the action was brought on a continuing guaranty to recover the price of goods sold after the guarantor's death, and it was held there could be no recovery, on the ground the guarantor's death terminated the guaranty, notwithstanding it was unknown

at the time the goods were sold.   In thus holding, the case
is clearly unsupported by the decided weight of authority.
Chitty on Contracts, *supra;* Brandt on Suretyship, sec. 113 ;
*Green* v. *Young,* 8 Greenlf. 14 ; *Moore* v. *Wallis et al.* 18 Ala.
458 ; *Royal Ins. Co.* v. *Davies,* 40 Iowa, 469 ; *Menard* v. *Scud-
der,* 7 La. Ann. 385.   If, as contended by appellant, there
is no difference in principle between that and the present
case, it must be admitted the former is an authority directly
in point sustaining his position ; but, as already indicated,
we think there is an essential difference between a guaranty
of future advances, whether in the form of a bond, or, as is
usually the case, of a mere stipulation, and a bond executed
by an agent and his sureties for the faithful discharge of the
former's duties in some business or employment, as was the
case here.   Such a bond is, in all its essential features, like
the bond of an executor, guardian, trustee, and the like.   The
only difference between the two cases is, that most of these
bonds are required to be taken by express statutory provision.
But this only relates to the duty of giving such a bond.   It
does not change its scope, character or legal effect when given.
All voluntary bonds executed for a lawful purpose, like statu-
tory bonds, derive whatever efficacy or binding force they
have, from the positive law of the State, and in this respect
there is no difference in the two classes of bonds.   To hold
that the estate of a surety on an ordinary trustee's bond is
absolutely discharged from all future liability upon the death
of the surety, on the ground that his death is *per se* an extin-
guishment of the bond, would certainly be a startling proposi-
tion to come from this or any other court of final resort ; and
yet to decide this case in conformity with appellant's theory
would be, in legal effect, to assert, as we understand it, that
very proposition.   We unhesitatingly decline, both upon rea-
son and authority, to give our adhesion to any such a doctrine.
We have no doubt of the correctness of the ruling of the trial
court in allowing appellee's claim to the extent it did.

26—113 ILL.

With respect to the question raised by the assignment of the cross-error, but little need be said.

We are of opinion the court also ruled properly in refusing to allow appellee the amount of deficit for the month of February,—not on the ground, however, the bond had become *functus officio*, but because the company, in retaining in its service J. B. Booker & Co. after notice of the January default, which was just cause for discharging them, violated a duty which it impliedly assumed to Rapp and his legal representatives on accepting the bond. When the employer of a clerk or other agent takes from another a bond of indemnity, or other instrument, guaranteeing the honesty and fidelity of such clerk or agent while in the service of the employer, the latter impliedly stipulates that he will not knowingly retain such clerk or agent in his service after a breach of the guaranty justifying his discharge, and that in the event he does so without the surety's consent, it is to be at the employer's own risk. This is not only fair dealing and common honesty, but it is a rule of law also. The principle here announced is well established by the authorities. *Phillips* v. *Foxall*, 27 L. T. (N. S.) 231; 7 L. R. Q. B. 666; *Anderson* v. *Aston*, 28 L. T. (N. S.) 35; 8 L. R. Exch. 73.

Holding, as we do, the ruling of the trial court was correct in allowing the claim for the amount it did, it follows the Appellate Court properly affirmed the order.

*Judgment affirmed.*

DICKEY and CRAIG, JJ.: We can not concur in this decision. We think this bond, on the part of the surety, is simply a continuing guaranty by him of the good conduct of the agents of the insurance company,—that the relations of the parties were in their nature capable of determination at the will of either the insurance company or of the agents in question, or at the will of the surety. This surety certainly could not be held indefinitely, but by notice of his

unwillingness to be bound further, could relieve himself from liability accruing thereafter. �different In this his case differs from that of surety for an officer, executor or guardian. ⌐We think the death of the surety operated to terminate his obligation as to moneys coming to the hands of the agents thereafter.⌐ On this latter question the authorities are not in harmony. We, however, think the reason of the matter is decidedly in favor of the proposition that in this regard death was equivalent to notice. See *Jendevine* v. *Rose*, 36 Mich. 54; *Jordan* v. *Dobbins*, 122 Mass. 168; *Harris* v. *Fawcett*, 15 Law Rep. Eq. C. 311.