ERASTUS GAY, EXECUTOR, ET AL. *vs.* SUSAN WARD, ADMINISTRATRIX ET AL.

First Judical District, Hartford, October Term, 1895. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and GEORGE W. WHEELER, Js.

A guarantor may, upon notice, revoke or terminate a contract of continuing guaranty, unless such right is excluded by the terms of the contract.

While the death of the guarantor will not *ipso facto* terminate such a contract, yet his death coupled with knowledge thereof by the party guaranteed is, in legal effect, a revocation, and precludes the latter from thereafter making fresh advances or renewing notes given for former advances, in reliance upon the credit of the guarantor under the contract.

Whatever may be the liability of the estate of such deceased guarantor, it does not extend to his distributees or their vendees, who are strangers to the guaranty.

These principles are equally applicable to a suit for contribution by a co-guarantor who has been compelled to pay the full amount guaranteed by the contract.

One co-guarantor who has voluntarily paid to his associate a portion of the sum the latter has been obliged to pay on the contract of guaranty, cannot join with such associate in a suit against the other co-guarantors for contribution.

[Argued October 1st—decided December 16th, 1895.]

ACTION for contribution, brought to the Superior Court in Hartford County and reserved by that court, *Thayer, J.,* upon an agreed statement of facts, for the advice of this court. *Judgment advised for the defendants.*

The case is sufficiently stated in the opinion.

*Charles E. Perkins,* with whom was *Arthur Perkins,* for the plaintiffs.

I. The death of Augustus Ward and Samuel S. Cowles did not free their estates from liability which might thereafter accrue upon the bond. Brandt on Suretyship, §§ 248, 258, 320 ; DeColyar on Guaranties, 344 ; *Richardson* v. *Draper,* 87 N. Y., 347 ; *Hecht* v. *Weaver,* 34 Fed. Rep., 111 ; *Knotts* v. *Butler,* 10 Rich. Eq. (S. C.,) 143. This conclusion necessarily

results from the position of the signers of this bond to each other. The bond itself provided for a release from this liability by notice, which might be given either by the signer, or by his executors or administrators after his death; and as no such notice was given, it remained in full force notwithstanding the death.

This same principle also applies to the claim of the defendants, that the limitation of presenting claims against the estates of deceased persons, is a bar.

A point is made that it is necessary to make all the co-sureties parties to this proceeding; but it is held in many cases, and in good sense, that it is not necessary to make those who are insolvent, or are out of the State, parties. Brandt on Sureties, § 256.

II. The other important question in the case is as to the direct liability of Mrs. Hardy in this suit. Her claim is that no action will lie against her individually, but the only way of reaching any of the property which came from Samuel S. Cowles, and which she now owns, is by a proceeding against his administrator. No doubt this would be the proper and only course in an action at law for contribution, where each of the guarantors was liable for a specific proportion of the amount guaranteed. If all the signers or their estates were solvent, actions would only lie at law, as each one would be liable only for a specific amount, and there would be no joint liability.

By the terms of the Practice Act, as well as by its spirit, a suit is to be brought against the person who is really and directly liable for a claim, and all the old strict rules of law by which one had to sue this, that, or the other person, who were not the real ones who ought to pay, have been done away with.

*T. Henry Dewey* of New York, for Mary C. Hardy and the executors of Samuel S. and Horace Cowles.

I. The complaint should be dismissed for want of equity. If any right exists, there is an adequate remedy at law. The contract of January 30th, 1872, fixed the amount of contri-

bution which each should pay, making insolvency and non-residence immaterial. Baylies on Sureties and Guaranties, 447; DeColyar on Guarantors, 349; Brandt on Suretyship and Guaranty, § 291; *Brace* v. *North*, 30 Conn., 60; 1 Parsons on Contracts, 37, and cases cited; 1 Story's Eq. Jur., § 498; *Stone* v. *Stone*, 32 Conn., 143; *Bulkeley* v. *Welch*, 31 id., 339, 344.

II. The death of Samuel S. Cowles, with notice of the same to all parties interested, operated as a revocation of his guaranty to the bank, as to discounts made subsequent to his death.

In the guaranty in question the guarantors themselves provided for release from liability thereon, by giving notice; but that was cumulative only, as the law incorporated into the contract a similar provision, as it did also, a provision of revocation in the event of death. The authorities on this point are numerous and conclusive. 2 Parsons on Contracts, 30; Baylies on Sureties and Guarantors, 8, 9, 10, 287, 298 and 299, note; 2 Williams on Executors (9th Ed., 1893), 1660; 1 Smith's Mercantile Law (10th Ed., 1890), 587, 588; *Jordan* v. *Dobbins*, 122 Mass., 168; *Hyland* v. *Habich*, 150 id., 112; *Nat. Eagle Bank* v. *Hunt, Admr.*, 16 R. I., 148; *Kernochan* v. *Murray*, 111 N. Y., 309; *Agawam Bk.* v. *Strever*, 18 id., 502, 513, 514; *Hunt* v. *Roberts*, 45 id., 691, 696; *Michigan State Bank* v. *Estate of Lavenworth*, 28 Vt., 210; *Rapp* v. *Phœnix Ins. Co.*, 113 Ill., 390, 395, 396; *Jeudevine* v. *Rose*, 36 Mich., 54; *Pleasanton's Appeal*, 75 Pa., 344; *Slagle* v. *Forney's Executors*, 15 Atl. Rep., 427; *The Home National Bk. of Chicago* v. *Estate of Waterman*, 30 Ill. App., 535; *La Rose* v. *Bank*, 102 Ind., 332; *Conduitt* v. *Ryan*, 3 Ind. App., 1; *Taussig* v. *Reid*, 145 Ill., 488; *Menard* v. *Scudder*, 7 La. An., 385, 391, 392; *Cremer* v. *Higginson*, 1 Mason, 323; *Gelpcke* v. *Quentell*, 74 N. Y., 601; *City Nat. Bk.* v. *Phelps*, 86 id., 484, 490; *Mason* v. *Pritchard*, 12 East., 226; *Westhead* v. *Sproson*, 6 H. & N., 728; *Harriss* v. *Fawcett*, L. R. 15 Eq. Cas., 311; *Offord* v. *Davies*, 31 L. R. C. B., 319, 12 C. B. N. S., 748, 757; *Coulthart* v. *Clementson*, L. R. 5 Q. B. D., 42; *Lloyds* v. *Harper*, L. R. 16 Ch. Div. 290, 314, 319; *Brown* v. *Batchelor*, 1 N. & H., 255, 263.

III. The plaintiffs are not entitled to contribution from the estate of Samuel S. Cowles. There is no just and equitable ground for it. There was no common burden. The right of contribution is an equity which exists whenever one person has borne a common burden. Where there is no common burden there can be no right of contribution. Bispham's Equity, §§ 328, 330, 331; *Munson* v. *Drakely*, 40 Conn., 560; *Tobias* v. *Rogers*, 13 N. Y., 59; *Wells* v. *Miller*, 66 id., 255; *Kramph's Exrs.* v. *Hatz's Exrs.*, 52 Pa. St., 525; *Lowndes* v. *Pinckney*, 1 Rich. Eq. (S. C.), 155; 1 Brandt on Sureties, 402, 397, 415; *Russell* v. *Failor*, 1 Ohio St., 327; *Stockmeyer* v. *Oertling*, 35 La. An., 467; *Ledoux* v. *Durrive*, 10 id., 7; *Turner's Admr.* v. *Thom*, 89 Va., 745; *Skrainka* v. *Rohan*, 18 Mo. App., 340, 343; *Briggs* v. *Hinton*, 14 Tenn., 233; *Cochran* v. *Walker's Exrs.*, 82 Ky., 220; De Colyar on Guarantors and Sureties, 343, 344; *Johnson* v. *Harvey*, 84 N. Y. 365; *Camp* v. *Bostwick*, 20 Ohio St., 337; Adams' Equity, 267; *Aspinwall* v. *Sacchi*, 57 N. Y., 335; *Stirling* v. *Forrester*, 3 Bli., 590.

IV. No action for contribution can be maintained against Mary C. Hardy, or the administrator of Horace Cowles. There never was any joint relation or obligation between them and the plaintiff to the bank. They were strangers to the guaranty.

V. The plaintiff's right of contribution against the estate of Horace Cowles, if any ever existed, is absolutely barred by failure to exhibit it to the representative of that estate within four months after it accrued. Hence it must be barred as to the estate of Samuel S. Cowles. General Statutes, § 581; *Cone* v. *Dunham*, 59 Conn., 161; *Gay's Appeal from Probate*, 61 id., 445.

VI. There can be no judgment in this case, personal or otherwise, against the representative of Horace Cowles, or against Mary C. Hardy. The remedy, if the plaintiffs have a right, is a judgment against the personal representative of Samuel S. Cowles only. *Hawley* v. *Botsford*, 27 Conn., 80; *Bacon* v. *Thorpe*, ibid., 251; *Davis* v. *Weed*, 44 id., 569; *Davis* v. *Van Sands*, 45 id., 600; *Griswold* v. *Bigelow*, 6 id.,

258; *Seymour* v. *Seymour*, 22 id., 272; *Pitkin* v. *Pitkin*, 7 id., 306, 314.

VII. There is a misjoinder of plaintiffs. The fact that the plaintiff Wadsworth voluntarily paid to the executors of William Gay one-half of the judgment, does not entitle him, together with William Gay or his representatives, to maintain an action against every joint party for contribution. If Wadsworth paid voluntarily any part of the money due from the estate of Samuel S. Cowles, he cannot recover it. He should have paid his share, but not the share of other persons liable to contribution. *Graves* v. *Smith*, 4 Tex. App., 537.

*Henry C. Robinson*, for Susan Ward, Admx.

I. The estate of Augustus Ward is not liable at all to a claim for contribution. *Exchange Bank* v. *Gay*, 57 Conn. 224. It must be evident, then, from the construction given by this court to this transaction, that the fundamental elements of the conditions of contribution are lacking in this case. The fundamental principles of contribution are familiar. The right to contribution is " based on equality of *burdens* and *benefits*." DeColyar on Guaranties, 339. This is the definition in the leading case of *Deering* v. *Winchelsea*, 2 B. & P. "It is enforceable if there is no circumstance rendering the equities between them otherwise than equal." Bishop on Contracts, § 216. This underlying principle is recognized in all cases.

Applying this principle to the case at bar, how can Mr. Ward's estate be interested in a credit given to a corporation to enable it to carry on its business in which the estate has no interest at all? So far as the notes outstanding at the death of Mr. Ward have been paid, there can be no reasonable claim of equality of burdens and benefits between his estate, no longer a stockholder, and the members of the corporation. Nor can the claim be successfully made that there was equality in reference to the notes that were renewed. A renewal of a debt of a corporation for which a guarantor is liable is a payment, unless it is renewed by his consent.

The limitation of time for presenting claims against Ward's estate, of which Gay, Wadsworth, and the bank had express notice, is obligatory upon these parties, although technically the cause of action in the present case did not arise until the date of contribution. Aside from the immediate force of statutes of limitations, equity will allow the enforcement of no claim which has been marked by laches, and that without any regard to statutory limitations. *Halstead* v. *Grinnon*, 152 U. S., 412, 416, and citations.

The death of Mr. Ward terminated his responsibity under the contract. An essential element of this contract is the right of the guarantors at any time to withdraw from its toils, as to indebtedness incurred subsequently to such withdrawal. *Offord* v. *Davies*, 12 C. B. N. S., 748; *Jordan* v. *Dobbins*, 122 Mass., 168; *Coulthart* v. *Clementson*, L. R. 5 Q. B. Div., 46. The death of the guarantor acts *per se* as a discharge, and terminates his liability upon the contract for subsequent indebtedness. *Coulthart* v. *Clemenston*, *supra*; *Harriss* v. *Fawcett*, L. R. 15 Eq. 311, L. R. 8 Ch., 866; *Jordan* v. *Dobbins*, *supra*; *Hyland* v. *Habich*, 150 Mass., 112, 6 L. R. A., 383; *In re Sherry*, L. R. 25 Ch. Div., 705; Smith Merc. Law, 467; Williams on Executors, 1869; 9 Amer. & Eng. Ency. of Law, 83, 84: *Bank* v. *Hunt*, 16 R. I., 148; *Bank* v. *Waterman*, 30 Ill. App., 535. Notice to the bank of his death was notice of a discontinuance of his guaranty; and with the discontinuance of the guaranty, the giving of new credit by renewals discharged him from all obligation on account of such indebtedness. The well-established principle of law that indulgence to a principal, by extension of time or otherwise, releases the surety, is here applicable; and even if the notes, whose payment was guaranteed, had remained in the bank as overdue paper, which does not appear to be the case, the Ward estate would have been entitled to their immediate collection against a then solvent corporation, and *a fortiori* is released by repeated renewals after Ward's death and until that corporation becomes insolvent. DeColyar on Suretyship, § 433; 9 Amer. & Eng. Ency. of Law, 83, 84, and citations; *Adams* v. *Way*, 32 Conn., 172.

II. If Mr. Ward's estate can be compelled to answer in this cause, it is only to the extent of one-thirtieth part of six-elevenths of the judgment for damages recovered by the bank; that is to say, one-thirtieth of six-elevenths of $11,520.82.

That his estate cannot be compelled to contribute to costs and expenses in a suit of which he had no notice, is settled by the case of *Chapin* v. *Smith*, 52 Conn., 263–64.

It is a familiar principle that, if it be arranged by contract that each surety shall be answerable only for a given portion of one sum of money, there is no right of contribution among the co-sureties beyond that amount. *Pendlebury* v. *Walker*, 4 Y. & C., 424, 441; *North* v. *Brace*, 30 Conn., 60; *Deering* v. *Earl of Winchelsea*, 2 B. & Pul., 270; 1 Leading Cases in Equity, H. & W., notes, 96, and cases cited; *Craythorne* v. *Swinburne*, 14 Vesey, 164; 1 Parsons on Contracts, 32; Burge on Suretyship, 385; Story, Equity Juris., § 498; *Andrews* v. *Calender*, 13 Pick., 484; DeColyar on Suretyship, 343, 344; Pomeroy's Equity Juris., § 1418; *Armitage* v. *Pulver*, 37 N. Y. 494; Brandt on Suretyship, § 252.

The case of *Security Ins. Co.* v. *St. Paul Ins. Co.*, 50 Conn., 233, stands upon entirely different principles, because the facts are essentially different. The relations of the parties there were common. In this case there is no common relation between the plaintiffs and the defendant Ward.

WHEELER, GEORGE W., J. This case comes before us for our advice, on a reservation upon an agreed statement of facts, and with a stipulation, entered into by all the parties to the record, that all questions arising upon the pleadings or upon the agreed facts may be finally determined by this court.

On January 8th, 1872, the stockholders of the Delaney and Munson Manufacturing Company, located at Farmington, Connecticut, executed and delivered to the National Exchange Bank of Hartford, a contract of continuing guaranty in the form of a bond, the terms of which appear at length in the opinion of this court in the case of *National Exchange*

*Bank* v. *Gay*, 57 Conn., 224, 231, brought against one of the guarantors upon the bond.

This bond guaranteed to the bank "the full, prompt and ultimate payment" of all commercial paper which the bank may "have discounted or may hereafter discount . . . to an amount not to exceed $15,000 in all at any one time." It provided that upon notice to the bank by one or all of the guarantors upon such instrument, such guarantor or guarantors should not be holden upon said bond for any liability created by such company subsequent to the giving of such notice. From the date of the bond to February 9th, 1888, the bank discounted commercial paper of said company, upon which date the company failed. On January 21st, 1889, the bank recovered judgment against the executors of Gay, one of the guarantors upon the bond, for the sum of over $11,000, which sum, together with the expenses of the suit, the executors paid. Subsequently Wadsworth, another guarantor upon the bond, voluntarily paid to the executors of Gay one half of said amounts.

The present action is brought by the executors of Gay and of Wadsworth, against the administratrix of Augustus Ward, a guarantor upon the bond; William Potts, administrator upon the estate of Samuel S. Cowles, a guarantor upon the bond; Horace Cowles, a son of said Samuel S. Cowles, and Mary C. Hardy, a purchaser from a distributee of the estate of Horace Cowles.

Said Ward died April 6th, 1883; his estate was duly settled and distribution made December 8th, 1883. Said Samuel S. Cowles died in 1873; his estate was duly settled and distribution made June 7th, 1873, a part being distributed to his son, Horace Cowles, who died in 1876; his estate was duly settled and distribution made September 25th, 1876. A part of the estate inherited by Horace Cowles from his father, Samuel S. Cowles, was purchased by Mary C. Hardy from a distributee of the estate of Horace Cowles, and owned by her when she was made a party to this action.

All of the discounts existing February 9th, 1888, which the estate of Gay and Wadsworth paid, were made by the

bank long subsequent to the death of Samuel S. Cowles, and none were renewals of discounts made in his lifetime. Five thousand dollars of said $11,000, were discounts made by the bank after having notice of Ward's death, and $6,000 of said $11,000 were renewals of paper made after notice of Ward's death, but of paper originally discounted prior to Ward's death. The bank, Gay, and Wadsworth, had immediate notice of the death of said Samuel S. Cowles and of Ward. The said Manufacturing Company was solvent at the time of the death of said Samuel S. Cowles and of Ward.

The stockholders of the Delaney and Munson Manufacturing Company, by pledging their individual credit to the National Exchange Bank, secured funds, through discounts made by the bank, with which to conduct its business. " To . avoid the inconvenience of indorsements by several individuals upon each of a large number of original notes and the renewals thereof, the obligors made one comprehensive continuing contract of indorsement in the form of a guaranty under their respective hands and seals." *Exchange National Bank* v. *Gay, supra.*

The bond constituted a contract of continuing guaranty upon the part of its obligors or guarantors, of payment of all paper discounted by the bank up to the limit of the amount named in the bond. No consideration passed at the execution of the bond. Each discount, when made upon the credit of the guaranty, constituted a consideration, separable and divisible. No obligation arose and no liability was created until a discount was made upon the credit of the guaranty. The bond was framed to meet the contingency of the long continuation of discounts by the bank, and the extension and renewal of discounts made upon the security of its guaranty.

Upon the nature of this guaranty this court expressed itself, in the case we quoted from above, as follows : " To guarantee 'full and prompt' payment would meet the case of a note, on usual bank time, actually to be paid in full at maturity. To guarantee, in addition to 'full and prompt' payment, the 'ultimate' payment, can have no other mean-

ing than that the obligor should continue bound to the end of all substitutions, renewals and extensions."

The bank was under no compulsion to discount the company's paper; it might, at its option, refuse to continue discounting it; when it made the discounts the guaranty of the bond attached. Each guarantor upon the bond might, upon notice in writing to the bank, terminate all liability thereafter arising under the bond. Unless the terms of the guaranty forbid, the law writes in the contract of continuing guaranty a like power to revoke the guaranty upon notice. *Coulthart* v. *Clemenston*, L. R. 5 Q. B. Div., 42; *Jordan* v. *Dobbins*, 122 Mass., 168; *Agawam Bank* v. *Strever* 18 N. Y., 502.

The effect of the death of a guarantor upon a continuing guaranty has been determined differently in different jurisdictions. In Massachusetts death is held to work a revocation of the guaranty. The court in construing a continuing guaranty of the sale of goods, in the case of *Jordan* v. *Dobbins*, *supra*, said: " Death terminates the power of the deceased to act, and revokes any authority or license he may have given, if it has not been executed or acted upon. His estate is held upon any contract upon which a liability exists at the time of his death, although it may depend upon future contingencies. But it is not held for a liability which is created after his death, by the exercise of a power or authority which he might at any time revoke." See also, *Hyland* v. *Habich*, 150 Mass., 112.

In England death does not work a revocation of the continuing guaranty. The case of *Coulthart* v. *Clementson*, *supra*, was an action brought by a bank upon a continuing guaranty against the executor of a deceased guarantor. The court said: " A guaranty like the present is not a mere mandate or authority revoked *ipso facto* by the death of the guarantor."

These two cases illustrate the two views held by courts of different jurisdictions. We prefer to adopt the latter view. To adopt the Massachusetts doctrine would impose upon the guarantee the burden of knowing at all times whether or not the guarantors are in life. There could be no safety in rely-

ing upon the credit of the guarantor, unless at the moment of reliance the guarantee knew the guarantor to be in life. The practical difficulties in the way of a guaranty so construed, would prevent credit being given upon it and curtail a useful method of commercial business. Further, a guaranty of this nature is intended to continue until revoked by act of the parties or its equivalent.

But when the guarantee has knowledge of the death of the guarantor, such knowledge works a revocation of the guaranty. The guarantee no longer relies upon the credit of the deceased guarantor. Each advance made by the guarantee constitutes a fresh consideration; and when made, an irrevocable promise or guaranty on the part of the living guarantors. Each advance thereafter made is upon the credit of the living, not of the dead guarantor. Were this not so —unless it be held that the representatives of the deceased may upon notice terminate the guaranty—the guaranty terminable at the option of the guarantor during life becomes, upon his death, never ending. The limitation which the law gives the living, is denied the dead. Estates must remain unsettled, devises of property be withheld so long as the guaranty may last, and the representatives of the deceased guarantor be powerless to save his estate from a loss which neither he nor they authorized or received benefit for. Such a result justifies and impels a court in reading into the guaranty a limitation of termination of the guaranty, upon notice of the death of the guarantor, as well as upon notice from the living guarantor. Any notice of death which brings that fact within the knowledge of the guarantee, is a proper and sufficient notice.

In the case of *Coulthart* v. *Clementson, supra,* the court said: "It is now established by authority that such continuing guaranties can be withdrawn on notice during the lifetime of the guarantor, and a limitation to that effect must be read, so to speak, into the contract. But what is to happen on his death? Is the guaranty irrevocable and to go on forever? It would be absurd to refuse to read into the lines of the contract in order to protect the dead man's

estate a limitation which is read into it to protect him while he is alive. . . . But if the executor has no option of the sort, then, in my opinion, the notice of the death of the testator and of the existence of a will is constructive notice of the determination as to future advances of the guarantee. The bank from that moment are aware that the person who could during his lifetime have discontinued the guaranty by notice cannot any longer be a giver of notices; that his estate has passed to others, who have trusts to fulfil, and it is easy for them to ascertain what those trusts are. If these trusts do not enable the executor to continue the guaranty then the bank has constructive notice that the guaranty is withdrawn." *Nat. Eagle Bank* v. *Hunt, Adm'r*, 16 R. I., 148; *Harriss* v. *Fawcett*, L. R. 15 Eq. Cas., 311.

The authorities uniformly hold, either that death, *ipso facto*, or notice of death, revokes a continuing guaranty. The fact that the instrument is under seal cannot change its nature or construction. *Jordan* v. *Dobbins*, 122 Mass., 168; *Offord* v. *Davies*, 12 C. B. N. S., 748. A similiar doctrine holds that notice of the dissolution of a copartnership revokes a continuing guaranty made by the copartnership. *City Nat'l Bank of Poughkeepsie* v. *Phelps*, 86 N. Y., 484.

The application of these principles to the case in hand is this: All of the discounts, for which recovery was had against Gay's estate and payment made by Gay's executors and Wadsworth, were made after notice of the death of Samuel S. Cowles; his representatives are therefore freed from all liability for such discounts. Liability, if any, for discounts so made upon the credit of the guaranty, could only accrue against the estate of Samuel S. Cowles, and could in no view of the case be maintained against the estate of Horace Cowles, or Mary Hardy.

Five thousand dollars of the said discounts were made after notice of the death of Augustus Ward; his representatives are therefore freed from all liability for such discounts. The remaining discounts, $6,000, were originally made before the death of Augustus Ward; his death, with notice, did not relieve his estate from liability for such discounts. For

all discounts made prior to his death, whether original discounts or renewals or extensions thereof, his estate is liable upon his death.

The duty of the bank upon this bond, if it desired to hold the estate of Ward liable, was to enforce its claim upon the paper existent at Ward's death, against his estate. Instead of this the bank renewed and extended its discounts, taking new paper for the old, without the knowledge or acquiescence of the representatives of Ward. Thereafter the bank must look to the remaining guarantors upon the bond; it waived its right to enforce payment from the estate of Ward, when it accepted paper in renewal of the old. Each renewal of the old paper constituted payment of the old paper, so far as Ward's estate was concerned. Each renewal so made had, for its security, the guaranty of the living guarantors upon the bond, who had not notified the bank of the termination of their liability upon the guaranty.

The conclusion arrived at is just to the bank, for it can cease, upon notice of the death of a guarantor, to renew paper then discounted, and can enforce its payment against the estate of the deceased guarantor. It is just to the remaining guarantors who can, upon notice of the death of a guarantor, terminate their liability and, if compelled to pay that liability, by appropriate remedy compel the estate of the deceased guarantor to contribute his proportion to the liability incurred. For all liability arising before notice of the death of the guarantor, the remaining guarantors can provide by the terms of the guaranty.

In the case at hand all the guarantors upon this bond had notice of the death of both Samuel S. Cowles and Augustus Ward, and made no attempt to terminate their liability upon the bond, and no effort to compel the estate of either to help meet the liability existing; but thereafter, without the knowledge, consent, or acquiescence of the representatives of Cowles or Ward, renewed the old paper through a long series of years, and increased their own liability by fresh discounts.

A renewal, of paper made before the death of a guarantor, upon the credit of a bond guaranteeing payment of such paper,

made after notice of said death to the guarantee, terminates the liability of such guarantor after said notice.

The precise question at issue was determined in accordance with the conclusions we reach, in the case of *National Eagle Bank* v. *Hunt*, 16 R. I., 148, 153. In its opinion the court said: "The guaranties in the case at bar come within the second class above considered. They were, therefore, upon the authorities cited, terminated by the death of the guarantor and notice of it to the plaintiff, as to all subsequent transactions. As, however, the note described in the declaration had been discounted, and the net proceeds had been paid to the maker prior to the death of the guarantor, the plaintiff would have been entitled to recover but for the fact, set up in the pleas, that after notice of the death of the guarantor it extended the time of payment for a further period by taking a new note from the principal debtor and receiving the interest thereon in advance, without the consent of the defendant, and without any reservation of his right assented to by the principal, to insist upon immediate payment by the principal, and, in default of such payment, to pay the debt himself, and proceed at once against the principal. That such action on the part of the plaintiff was sufficient to release the estate of the guarantor, and the defendant as his representative, from liability, is too well established to need the citation of authority."

The question whether a guaranty will be revoked by notice of death, when by the terms of the guaranty the guarantor could not in life have revoked the guaranty, is not before us, and we express no opinion upon this point.

The claim that because the bond of guaranty in this case bound the guarantors to the "full, prompt and ultimate payment" of all paper discounted after the execution of such bond, therefore the guaranty covers discounts made before the death, and the renewals of such discounts made after the death of the guarantor, cannot be sustained. The guaranty here applies to paper discounted, and to the renewal or extension of such discounts, before the decease of a guarantor. Otherwise a continuing liability existed against the estate of

the deceased guarantor so long as the renewals were made. Such a result was not intended by the parties to the bond. They did not intend to continue a liability after the death of a guarantor, for an indefinite period, which he and they could terminate at any time during his life. A contract of guaranty is to be construed so as to promote the use and convenience of commercial intercourse. *Davis* v. *Wells,* 104 U. S., 159, 169. And its language is not to be extended by any strained construction, for the purpose of enlarging the guarantor's liability. *Hall* v. *Rand,* 8 Conn. 560, 573. But its construction is to be according to what is fairly to be presumed to have been the understanding of the parties, without any strict technical nicety. *Lee* v. *Dick,* 10 Pet. 482, 493 ; *Evansville Nat'l Bank* v. *Kaufmann et al,* 93 N. Y., 273, 281. These established rules of construction accord with the construction we give to the guaranty before us.

We deem it unnecessary to discuss other questions argued before us, since the questions considered are decisive of the case.

We have not overlooked the fact that there has been a misjoinder of parties defendant. The estate of Horace Cowles and Mary Hardy were strangers to the guaranty. The representatives of Samuel S. Cowles are alone liable upon his obligations.

There is, as well, a misjoinder of parties plaintiff. Mr. Wadsworth voluntarily paid one half of the amount recovered against the estate of Gay; he cannot now maintain with Gay's representatives an action to compel payment to them, of the share of other guarantors paid by him for them.

The Superior Court is advised to render judgment in favor of the defendants.

In this opinion the other judges concurred.