## Donnell Manufacturing Co. v. Jones.

1. *Bonds—Material Alterations—Duty of the Court to Instruct as to the Law.*—A person employed in the service of another, being required to give a bond for the faithful performance of certain services, wrote the bond himself, from a form furnished him by his employer, and took it away with him for the purpose of having it signed and acknowledged by his sureties, one of whom did not read the bond, or require it to be read, but inquired what it was intended to secure, and signed it after having been informed that it was only for the purpose of securing the return of a wagon, and implements which were furnished him by his employer for use in his business. Afterward. said person delivered the bond to his employer. When delivered, the condition of the bond was, that he should take good care of the implements, wagon and other property furnished him, deliver up the same in good condition when called upon to do so, and promptly report, deliver and pay over to the obligee, all money, goods and other property received by him. Default having been made, an action was brought against the obligors. The defense was a denial of liability, on the ground of material alterations in the bond. On one hand the evidence tended to show that the penalty, both in words and figures, and perhaps the names of the sureties, were inserted in the bond after it was signed, and before delivery to the obligees. On the other hand, there was evidence tending to show that if the bond was altered after it was signed, it was while it was in the hands of the person so employed, and before the delivery to his employer, and without the latter's fault or knowledge. *It was held* in this state of the evidence, to be the duty of the court to instruct the jury upon the law, as to what was, and what was not, a material alteration sufficient to avoid the bond, and leave the jury to determine the facts from the evidence.

2. *Material Alterations—A Question for the Court—Instructions.*— In an action upon a bond, the defense was that of material alterations, and there was a conflict of evidence on the trial. An instruction which informed the jury that if the bond sued upon had been altered in a material point by the principal obligor, after the same had been signed by his sureties, and without their knowledge and consent, then such bond would cease to be binding upon the sureties, unless afterward ratified by them, is erroneous, because it makes the jury the judges of what constitutes a material alteration of the bond.

3. *Defenses—Action on Bonds—Filling Blanks.*—It is no defense to an action on a bond, that the names of the sureties and the amount of the penalty were inserted in the appropriate blanks by the principal obligator after the execution, before the delivery of the instrument and without the knowledge or fault of the obligee.

4. *Bonds Signed in Blank—Authority of Principal Obligee.*—If the surety upon an official bond relying upon the good faith of his principal

permits him to have possession of the bond signed in blank, such an act will clothe the principal with authority to fill up the blanks in any appropriate manner consistent with the nature of the obligation, so that, as against the obligee, receiving the bond without notice or negligence, and in good faith, the surety will be estopped to allege that he executed the instrument with a reservation, or upon condition, with reference to filling the blanks, and this, whether the blanks to be filled relate to the penalty, or the names of co-sureties. The liability of the surety in these cases is put upon the ground that he makes the principal maker his agent to deliver the bond, and clothes him with apparent authority to fill up the bond, and to do any other acts which are necessary to make the instrument effectual for the purposes intended.

5.   *The Rule Applies to Private as Well as Official Bonds.*—A bond without a penalty is valueless; therefore where a surety signs a bond in this condition he authorizes the principal intrusted with the delivery of it to insert the penalty in the appropriate blank. And if the obligee takes the bond without notice or negligence, the surety is bound. The reason of this rule applies to private as well as to official bonds.

6.   *Of Two Innocent Parties Who Must Suffer.*—In a case where one of two innocent parties must suffer by the fraud or deceit of another, the loss should fall on him who put his trust and confidence in the deceiver.

7.   *Affirmance—Under the Rule in the Rapp Case.*—Unless it appears from the record that the obligor has been released from his entire liability upon the bond under the rule of law laid down in the case of the estate of Michael Rapp v. The Phœnix Insurance Co., 113 Ill. 390, the judgment will not be affirmed.

**Memorandum.**—Action on a private bond. Appeal from the Circuit Court of Jefferson County; the Hon. EDMUND D. YOUNGBLOOD, Circuit Judge, presiding. Heard in this court at the February term, A. D. 1893. Opinion filed September 8, 1893.

The statement of facts is contained in the opinion of the court.

APPELLANT'S BRIEF, ALBERT WATSON, LEE McKEIGHAM, AND ELLIS & PRIEST, ATTORNEYS.

It was proven by Jones and Sweeten that Fitts (whom Jones never saw before) told Jones the bond was only for the return of the wagon and samples; that Sweeten (whom Jones had known for twenty years) stood silent, neither reading nor offering to read or explain the contents of the paper to which his jurat was already affixed, and that Jones did not ask either of them to read it. Under such circumstances it becomes clearly material to know upon whom the

loss should fall, resulting from a subsequent forgery in the bond by Fitts. It will be remembered that Fitts was not then in the employ of plaintiff; on the contrary, he was required to furnish the bond before being employed. He was therefore the agent of his sureties for the delivery of the bond, and they, and not the plaintiff, are responsible for such additions as may have been made to it without the knowledge or consent of plaintiff. Graves v. Tucker, 10 S. & M. (Miss.) 9; Ladd v. Trustees, 80 Ill. 233; Griffith v. Reynolds, 4 Gratt. (Va.) 46; Western N. Y. Life Ins. Co. v. Clinton, 66 N. Y. 326; Casoni v. Jerome, 58 N. Y. 315; McWilliams v. Mason, 31 N. Y. 294; Booth v. Storrs, 75 Ill. 438; Craig v. Hobbs, 44 Ind. 363; Lucas v. Owens, 113 Ind. 521; Brandt on Suretyship and Guaranty, Sec. 353 *et seq.*

APPELLEE'S BRIEF, C. H. PATTON AND WILLIAM H. GREEN, ATTORNEYS.

Any alteration in a written contract which changes its terms, however slight, made by one party, without the consent of the other, will discharge the party or surety not agreeing to it. Gardner v. Horback, 21 Ill. 129; Walters v. Short, 5 Gil. 259. And this is so, even where the alteration is made by the principal after it is signed by the surety without the knowledge or consent of either the surety or the payee, and before delivery to the payee. For a precedent that fully covers this case see Wood v. Steele, 6 Wall. (U. S.) 80, and cases cited; Pew v. Laughlin, 3 Fed. Rep. 39.

It is conceded by counsel that all, or nearly all, of the several amounts alleged to have been collected by O. C. Fitts were collected by him after December 28, 1888, and that at that time he was a defaulter to the amount of $130, "which he promised to pay at once or send in a note of the amount, signed by his bondsmen." "He sent in $100, and the balance was never fixed." Here was a direct and positive notice that their agent was dishonest and a defaulter. He promised to have his bondsmen make good the deficit by giving their note for the amount due appellants from him

and good faith, "fair dealing and common honesty," demanded that they should have notified his bondsmen at once, and have discharged him from their services.

In the case of Estate of Rapp v. Phenix Ins. Co., 113 Ill. 402, the Supreme Court say: "We are of opinion the court also ruled properly in refusing to allow appellees the amount of deficit for the month of February, not on the ground, however, that the bond had become *functus officio*, but because the company, in retaining in its services J. B. Booker & Co., after notice of the January default, which was just cause for discharging them, violated a duty which it impliedly assumed to Rapp and his legal representatives on accepting the bond. When the employer of a clerk or other agent takes from another a bond of indemnity, or other instrument, guaranteeing the honesty and fidelity of such clerk or agent while in the service of the employer, the latter impliedly stipulates that he will not knowingly retain such clerk or agent in his service after a breach of the guaranty justifying his discharge, and that in the event he does so without the surety's consent, it is to be at the employer's own risk. This is not only fair dealing and common honesty, but it is a rule of law also. The principle here announced is well established by the authorities." Citing Phillips v. Foxall, 27 L. T. (N. S.) 231–7, L. R. Q. B. 666; Anderson v. Aston, 28 L. T. (N. S.) 35, 8 L. R. Exch. 78.

Although appellants knew of the dishonesty of their agent, O. C. Fitts, they neither discharged him nor notified his bondsmen of that fact. Instead, they retained him in their services and permitted him to represent them until the middle or latter part of the following April, some three and a half to four months, during which time he never made a report or settlement, and he collected the amount involved in this suit. Such conduct on their part is not consistent with "fair dealing and common honesty" with the sureties. Had they discharged him promptly on the 28th day of December, 1888, no part of the claim of $721.25 would have come into this dishonest agent's hands, and there could have been no loss. The rule that where one of two innocent par-

ties must suffer, the one in fault must bear the loss, would certainly place this alleged loss on appellant.

OPINION OF THE COURT, SCOFIELD, J.

The Donnell Manufacturing Company, appellant, vendor of grocers' and druggists' specialties, having its headquarters at St. Louis, Missouri, and doing business in many States, among them the State of Illinois, employed Oliver C. Fitts, in July, 1888, to sell its goods on commission and to collect its accounts in Southern Illinois. Before the contract of employment was made, Fitts was required to give bond for the faithful performance of certain obligations. He wrote the bond in appellant's office in St. Louis, copying it from a similar bond furnished him by the company's agent, and then took the instrument to Jefferson County, Illinois, for the purpose of having the same signed and acknowledged by his sureties. Appellee did not read the bond, or require it to be read, but inquired what it was intended to secure, and signed it after having been told that it was only for the purpose of securing the return of the wagon and samples which were to be furnished him by appellant for use in its business.

The bond was also signed by M. Fitts, the father of Oliver C. Fitts, and was thereupon taken by the latter to St. Louis and delivered to the company. The condition of the bond as delivered was, that Oliver C. Fitts should take good care of the samples and wagon and any other property furnished by appellant, and deliver up the same in good condition at any time when called upon by the company to do so, and promptly report, deliver and pay over to the company any and all moneys, goods or other property, received by him on account of said company. This action was brought against the obligors in the said bond for an alleged breach of the condition thereof. On the trial the suit was dismissed as to Mr. Fitts, who had died, and also as to Oliver C. Fitts, and was prosecuted against the appellee as sole defendant. The defense was a denial of liability on the ground of material alterations in the bond, and on the further ground of the

illegality of appellant's business, which was alleged to consist in part, of the unlawful sale of intoxicants in this State. The finding of the jury was for appellee, and from the judgment rendered on that verdict, the appellant has appealed to this court. The evidence tends to show that the bond was signed by James Jones with a lead pencil, and that afterward, and before the delivery of the instrument to appellant, and without the knowledge of Jones, his name was traced with ink over the lead pencil marks. The evidence also tends to show that the penalty, both in words and figures, and perhaps the names "James Jones," "Mr. Fitts" and "Jefferson County," were inserted in the bond after Jones had signed it and before delivery to the company. There were other slight alterations which need not be mentioned. But the most serious question arises from the conflict of the evidence with reference to the alleged alteration of the condition of the bond.

Appellee contends that the clause relating to reporting, delivering and paying over moneys, was inserted in the bond after he had executed it. He supports his affirmation by the testimony of Clark and Sweeten. On the other hand, appellant produces evidence which tends to show that if the bond was altered at all after Jones had signed it, this was done while the instrument was in the hands of Oliver C. Fitts, and before the delivery thereof to appellant, and without the latter's fault or knowledge. In view of the foregoing facts, we think the court erred in some of the instructions given at the request of appellee. These instructions are not numbered, either in the abstract or record, and therefore specific reference to them can not be conveniently made. It is sufficient to state, however, that at least three of the seven instructions given for appellee inform the jury that if the bond sued on was altered in a material point, by O. C. Fitts, after the same had been signed by appellee, and without appellee's knowledge or consent, then such bond ceased to be binding on appellee unless he afterward ratified the same. These instructions made the jury the judges of what would constitute a material alteration of the bond.

The jury might find that the penalty was inserted in the bond after the execution of the instrument, and they might call this a material alteration; or they might hold that the insertion of the name " James Jones " in the bond was a material alteration. This being true, the instructions referred to are erroneous, unless all of the alterations are material, so that any one of them, if proved, would, of itself, be sufficient for the avoidance of the bond. It is undoubtedly the law that it is no defense to an action on a bond that the names of the sureties and the amount of the penalty were inserted in the appropriate blanks in the bond by the principal obligor after the execution and before the delivery of the instrument without the knowledge or fault of the obligee. In Stoner v. Millikin et al., 85 Ill. 218, it was held that where one, when asked to sign a note as surety, refused unless another should first execute the same, and the principal maker forged the name of such other person, and thereby induced the first to sign the note, and procured money of one who had no notice of the fraud, the fact of the forgery and fraud would not release the surety so executing the note. In Stern et al. v. The People, for use, etc., 102 Ill. 540, the law as above stated, was held to be applicable to sureties on official bonds. In City of Chicago v. Gage et al., 95 Ill. 593, it was held that if the surety of an official bond, relying on the good faith of his principal, will permit him to have possession of the bond signed in blank, the surety will clothe the principal with apparent authority to fill up the blanks in any appropriate manner consistent with the nature of the obligation, so that as against the obligee receiving the bond without notice, or negligence, and in good faith, the surety will be estopped to allege that he executed the instrument with a reservation, or upon a condition with reference to the filling of the blanks, and this, whether the blanks to be filled relate to the penalty, or the names of co-sureties, or other thing. In the Gage case the surety signed the bond on the condition that the penalty should not exceed $250,000, that the co-sureties should be satisfactory, and that he should be

permitted to determine whether he would "stand on the bond" or not at the time of the acknowledgment. He did not authorize any one to fill the blanks, he did not acknowledge the bond, he did not approve or ratify it afterward. The blank for the penalty was filled out with $1,000,000 without his knowledge, and he was held liable on the bond for damages assessed at more than half a million dollars.

The liability of the surety in these cases is put upon the ground that he makes the principal maker his agent to deliver the bond, and clothes him with authority to fill up blanks, and to do any other acts which are necessary to make the instrument effectual for the purpose intended. A bond without a penalty is valueless; therefore, when a surety signs a bond in this condition, he authorizes the principal intrusted with the delivery of it to insert the penalty in the appropriate blank. If the obligee takes the bond without notice or negligence, the surety is bound. It is difficult to see how this rule of law can be limited in its operation to official bonds. The reason of the rule applies as well to private bonds. The Stoner and Stern cases cited above, show that as to the forgery of signature, the surety, who signs relying on the genuineness of the signature of a co-surety, is bound whether the bond be private or official. If this is the law, the act of filling blanks with the penalty and with the names of co-sureties, should not have a more prejudicial effect in one class of bonds than in the other. In any case one of two innocent persons must suffer by the fraud and deceit of another, and the loss should fall on him who puts trust and confidence in the deceiver. Stoner v. Millikin et al., *supra*. In any case the surety can put it beyond the power of the principal maker to perpetrate a wrong by filling the blanks himself, or having it done, before he signs the instrument. City of Chicago v. Gage et al., *supra*.

We are of the opinion, therefore, that the instructions which permitted the jury to determine what alterations were material, thereby conferring upon them the power to call that material which is immaterial in law, should not

have been given, and that the giving thereof is reversible error. It is urged, however, that, notwithstanding any errors appearing in the record, the judgment should be affirmed on the ground that appellee has been released from liability on the bond under the law as laid down in Estate of Michael Rapp v. The Phœnix Insurance Company, 113 Ill. 390, in which it was held that where the employer of a clerk or other agent takes from another a bond of indemnity, or an undertaking to become responsible for the honesty and fidelity of such clerk or agent in his service, the employer impliedly stipulates that he will not knowingly retain such clerk or agent in his service after a breach of the guaranty justifying his discharge, and if he retains him after such breach, the surety will not thereafter be liable. The evidence bearing upon this question shows that Oliver C. Fitts made a satisfactory settlement with appellant in September following his appointment. On December 28th he attempted to make another settlement, but was found to be indebted to the company in the sum of $130 or more, for moneys belonging to the company which had been collected and used by him. He promised to send the money immediately, or to get a note signed by the bondsmen and "fix that matter up." Afterward he paid $100, but the remainder was not paid and is included in the account sued on in this case. No notice of the defalcation was in any manner communicated to appellee, but Oliver C. Fitts was permitted to make collections for appellant till April, 1889, at which time he was indebted to appellant in the sum of $721.25 for moneys collected, in addition to certain claims for damages to the wagon and samples. In view of these facts and others appearing in the record, we would affirm the judgment of the court below on the authority of the Rapp case, were it not for the fact that about $30 of the amount sued for came into the hands of Oliver C. Fitts before the December settlement. Appellant could sue for this, as well as for a larger sum. The release arising under the authority of the Rapp case as applied to the record now before us can not be invoked by appellee for the affirmance

of the judgment inasmuch as it does not apply to the whole of appellant's claim. We deem it unnecessary to consider the other errors assigned. For the errors indicated the judgment of the Circuit Court is reversed and the cause is remanded.