## John B. Delbridge and William H. Barry v. Lake, H. P. & C. B. & L. Association.

1. CORPORATIONS—*Knowledge of its Officers and Agents is the Knowledge of the Corporation.*—A corporation can only act by its legally authorized agents or officers, and the knowledge of any officer or agent in respect to a matter pertaining to, or connected with his official duty, is, in law, the knowledge of the corporation.

2. EMPLOYER AND EMPLOYE—*Duty of Employer Toward Sureties when the Employe Gives a Bond of Indemnity.*—When the employer of a clerk or other agent takes a bond of indemnity, or other instrument, guaranteeing the honesty and fidelity of such clerk or agent while in the service of the employer, he impliedly stipulates that he will not knowingly retain such clerk or agent in his service after a breach of the guaranty justifying his discharge, and that in the event he does so without the surety's consent, it is to be at his own risk.

3. BUILDING AND LOAN ASSOCIATIONS—*Duties of the Secretary.*— Where the by-laws of a building and loan association require the secretary to turn over to the treasurer at the end of each month all moneys received by him during the month, he commits a breach of duty when he first fails to turn over such moneys, and he should at once be called

upon to account. In such case the liability of the sureties will be limited to moneys received during the month.

**Debt,** on a secretary's bond. Trial in the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Judgment for plaintiff on referee's report; appeal by defendant. Heard in this court at the October term, 1898. Reversed and remanded. Opinion filed April 17, 1899.

ARTHUR B. WILSON and HORACE G. STONE, attorneys for appellant Delbridge.

DEFREES, BRACE & RITTER, attorneys for appellant Barry.

After March 1, 1894, the secretary not only acted as secretary but he acted as treasurer also. His bondsmen are not liable for what he did as treasurer. People v. Pennock, 60 N. Y. 421; Am. Dist. T. Co. v. Lenning, 139 Pa. St. 594; LaFayette v. James, 92 Ind. 240; Syme v. Bunling, 91 N. Car. 48; U. S. v. Cheeseman, 3 Saw. 424; Com. v. Toms, 45 Pa. St. 408; U. S. v. Morgan, 28 Fed. Rep. 48; People v. Hilton, 36 Fed. Rep. 172; People v. Tompkins, 74 Ill. 482; 24 Am. & Eng. Ency. of Law, 756, 881.

MASTERSON & HAFT, attorneys for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

This is an appeal from a judgment rendered in an action of debt by appellee against appellants for $5,000 debt and $1,907.44 damages. The suit was on a bond in the penalty of $5,000. The bond was executed by W. F. McWhinney and appellants, December 30, 1893, and after reciting that McWhinney had been elected secretary of appellee for the term of one year, expiring on the fourth Tuesday of December, 1894, contains the following condition:

"The condition of this obligation is such that if the above bounden W. F. McWhinney, who has been elected secretary of said association for the term of one year, expiring on the fourth Tuesday of December, A. D. 1894, or until his successor is duly elected and qualified, shall well and truly perform the duties of said office and safely keep, account for, and turn over to his successor in office, all

moneys, papers or other property which may come in his hands by virtue of his official position, then this obligation to be void, otherwise to remain in full force and virtue."

The breach assigned in the declaration is as follows:

" That said McWhinney, as secretary, in accordance with his duties as such and in the regular course of his business as secrerary of said association, received large sums of money, to wit, $2,000, from the stockholders of the association and other sources, and converted the same to his own use, and wrongfully paid out, in violation of his duties as secretary, other large sums of money, to wit, $2,000, all of which was wrongfully paid out and converted to his own use and is the property of the plaintiff; that it was the duty of said secretary to receive said sums of money from the stockholders and other sources and to pay the same to the treasurer of the association immediately upon receipt of the same; that disregarding such duty, he converted the same to his own use and wrongfully paid the same to others than the treasurer of the association."

Appellants pleaded that McWhinney became secretary of appellee about the fourth Tuesday of December, 1893, his term to expire the fourth Tuesday of December, 1894, or when his successor should be elected and qualified; that prior to the fourth Tuesday of December, 1894, he departed this life; that until the time of his death he had well and truly performed the duties of his office, and safely kept the moneys, etc., of the plaintiff; that after his death and before the fourth Tuesday of December, 1894, the plaintiff elected his successor, and that said successor had never demanded of his, McWhinney's, heirs, executors or administrators that they turn over such moneys, etc., and that no effort had been made by the plaintiff, or McWhinney's successor in office, to obtain said money from said heirs, executors or administrators.

There are other pleas, not abstracted, which we deem it unnecessary to notice, as no question in relation to the pleadings is raised by counsel.

The cause, by agreement of the parties, was referred to William S. Hefferan, as referee. Evidence was heard before the referee, who reported, recommending that a

judgment should be entered in favor of appellee for $5,000 debt and $1,608.52 damages. Objections to the report were filed with the referee and were by him overruled, and exceptions were filed to the report in the Circuit Court, which were there heard and overruled, and the report confirmed, and judgment was entered as recommended by the referee.

Appellee, by its attorney, introduced in evidence certain by-laws prescribing the duties of the secretary and treasurer of the association. The by-law with regard to the secretary provides:

"The secretary shall keep a full and accurate report of the business of all meetings of the association and the board of directors, and for that purpose shall attend all meetings thereof. He shall enter such minutes in a book of record to be kept for that purpose. He shall keep an accurate account between the association and each of its stockholders. He shall draw and sign all orders and attend to all publications. * * * He shall make a statement of the financial affairs of the association and the business of the preceding quarter to the board of directors at the last meeting of each quarter, and shall publish an annual statement to the association on the fourth Saturday of December of each year. * * * He shall perform such other duties as are prescribed by the charter and by-laws, or that usually pertain to his office, or may be required by the board of directors or the association."

The by-law prescribing the duties of the treasurer is as follows:

"It shall be the duty of the treasurer to demand and receive from the secretary at least once each month all moneys paid into the association. He shall on or before the last day of each month deposit all moneys of the association received by him in such bank or banks as the board of directors shall from time to time designate. The treasurer shall pay out such moneys from time to time only upon the order of the board of directors or the association. Such order shall be drawn by the secretary and signed by the secretary and president, or (in the latter's absence) by the vice-president or president *pro tem.* The treasurer shall keep a correct account of all moneys received and disbursed by him. He shall, at the last meeting in December, March,

June and September of each year, render a full and accurate statement in writing of all business of his office. He shall perform such other duties as are required of him by the by-laws or may be required of him by the board of directors or the association, or that usually pertain to his office."

It will be observed that there is nothing in the by-law prescribing the duties of the secretary which requires or even contemplates that he shall receive any money. So far as appears from the by-law, his sole financial duties are to keep an accurate account between the association and each of its stockholders, to draw and sign orders and to make a statement to the board of directors each quarter of the financial affairs of the association. It is true that he is required by the by-law to perform such other duties as usually appertain to the office of secretary, or may be required by the board of directors or the association. The association can only act by the board of directors or an agent appointed by the board. The directors can only speak by the record, which, so far as is applicable to the secretary, would be by a by-law, and it does not appear that any agent or officer was appointed with power to prescribe or direct the duties of the secretary. The question would remain whether it was a duty usually pertaining to the office of secretary of the association to receive money.

George C. Munch, a witness for appellee, was examined and answered as follows :

Q. "State what were the sources of income to the association ?" A. "There was due from the shares held by the various members fifty cents per month per share."

Q. "You need not go into that ?" A. "And interest and premiums."

Q. "And interest and premiums on loans ?" A. "Interest and premiums on loans and stock."

Q. "What else ?" A. "Insurance money, loans repaid and taxes that were paid by the association."

Augusta Gale, assistant secretary of appellee and a witness for appellee, was asked by appellee's attorney: "State whose duty it was to receive the money of the association ?" Objected to and objection overruled and exception.

A. "Mr. McWhinney's duty." The same question, in substance, had been put to Munch, and objection to it was finally sustained.

We think the evidence was incompetent. It might, perhaps, have been competent to prove that to receive money due to the association was a duty which usually pertained to the office of secretary of the association, but it was not competent for the witness to state her opinion or conclusion as to what McWhinney's duties were. We would not regard this error as cause for reversal, however, as it is not relied on in appellant's argument.

The evidence shows that March 1, 1894, the secretary, McWhinney, settled in full with the treasurer and then owed the association nothing; also, that after that date the treasurer never made any demand on the secretary for money, although it was his duty by the by-law quoted *supra*, "to demand and receive from the secretary at least once in each month all moneys paid into the association." The evidence of the witness Munch, and other evidence in the record, shows that money due to the association was paid to the secretary every month. This must have been known to the board of directors and the treasurer. It is simply impossible that it was not known to the association and all its shareholders that fifty cents per share per month was payable to the association, as testified to by Munch. Yet no demand was made on the secretary by the treasurer, or any other officer of appellee, in any of the months of March, April, May, June, July or August.

It is alleged in the declaration that it was the duty of the secretary to receive moneys from the stockholders and other sources, and to pay the same, immediately upon receipt thereof, to the treasurer of the association. Inasmuch as it was made the duty of the treasurer to demand and receive from the secretary, at least once each month, all moneys paid into the association, it was certainly the corresponding duty of the secretary to pay such moneys to the treasurer at least once in each month. As a corporation can only act by its legally authorized agents, or officers, the

knowledge of any officer in respect to a matter pertaining to or connected with his official duty, is, in law, the knowledge of the corporation. The appellee, therefore, knew what its treasurer knew, namely, that the secretary was not paying to the treasurer moneys due to appellee which had been received by him.

In Estate of Rapp v. Phoenix Ins. Co., 113 Ill. 390, it appeared that by a contract between the insurance company and certain agents, for whom Rapp was surety, the agents were required to make a full settlement with the insurance company of each month's business at the end of each month. The agents failed to make a settlement for the month of January, and also for the next succeeding February. In a suit by the company against the sureties on Rapp's bond, it was held that there could only be a recovery for defalcations in January, the court saying: " When the employer of a clerk or other agent takes from another a bond of indemnity, or other instrument, guaranteeing the honesty and fidelity of such clerk or agent while in the service of the employer, the latter impliedly stipulates that he will not knowingly retain such clerk or agent in his service after a breach of the guaranty justifying his discharge, and that in the event he does so without the surety's consent, it is to be at the employer's own risk. This is not only fair dealing and common honesty, but it is a rule of law also." See also Donnell Manfg. Co. v. Jones, 49 Ill. App. 327.

In the present case the secretary committed a breach of duty when he first failed to turn over to the treasurer moneys received by him during the month. He should then have been called upon to account. The treasurer's book put in evidence shows the last money received by the treasurer from the secretary under date of March 15, 1894. The treasurer testified that the amount under that date was the last so received by him, but he testified on cross-examination that the entry of March 15th was not made for at least fifteen days after he received the money. He also testified that there was no record of any money paid to him between March 15, 1894, and the date of the secretary's death, August

22, 1894; that the last money so received by him was received in March, 1894. We can not tell from the record before us, whether the secretary received any money for the association in the month of March, 1894, except that paid to the treasurer; if he did, it was his duty to pay it over to the treasurer on the last of March or the first day of April at the latest, and in such case the liability of the sureties would be limited to moneys received by him during the month of March. If the secretary received no moneys for the association during March, 1894, except such as he paid to the treasurer, then the sureties would be liable for moneys received by him during the month of April, 1894, and their liability would be limited to that month. The conclusion would be the same if it should be held that the secretary was not in default because no demand was made. The liability in such case would not extend beyond the end of the month when the first demand should have been made. The bond executed by appellee is conditioned for the faithful performance by McWhinney of his duties as secretary, not for the performance of the duties of a treasurer. From some time in the month of March, 1894, until August 22, 1894, he was permitted by appellee to occupy substantially the position and perform the financial duties of treasurer. The evidence shows that he and persons in his office, during that time, at least five months, received all moneys payable to the association and retained all the money so received except what was paid out to creditors of the association on orders. In view of the way in which the business was transacted, it is difficult to understand what use the association had for a treasurer. The evidence of the treasurer, John L. Snyder, shows that he neither attended to nor understood the duties of his office. He says:

" The secretary made three payments in March, two in February. When he quit paying in March, I made no inquiry as to why I was not receiving money from him, because it was not my business to make such inquiries; don't see why I should inquire; it was in no way appertaining to my business; it is my business to receive the money when it is turned over to me, not my business to go after it.

If the secretary had not paid me any money from one year's end to another, I would not have considered it my duty to demand it of him."

Assuming appellee's evidence to be true, the larger part of the money received by the secretary and included in the judgment was received not only after the month of March, but after the month of April, 1894.

In making up the account of McWhinney as secretary, a start was made March 1, 1894, the reason for which is assigned to be that the secretary's and treasurer's accounts then agreed. Munch, who made up the account, which was approved by the referee and by the court, testified that the secretary accounted to the treasurer for all funds received by the secretary up to March 1, 1894, and that March 1, 1894, there was $743.72 in the hands of the treasurer; yet in the account stated by the referee, this amount ($743.72) is charged to the secretary, and is continued as a charge against him down to August 22, 1894, the date of his death. If, March 1, 1894, the secretary had paid to the treasurer all moneys before that date received by him, it is manifest that, after March 1st, he could only be charged with the amounts received by him after that date, less proper disbursements made after that date.

The judgment will be reversed and the cause remanded.