Richards, J.
The plaintiffs in error, Horatio N. and Adelaide M. Jex, became sureties in 1910 on a bond in the amount of $500, given to guarantee the faithful performance of the duties of one Walter Frank Dieterle, who was an employe of the Jewel Tea Company. Among the duties which devolved upon the employe was the collection of money from customers, aggregating $25 to $75 per day, making a daily report of such collections, and turning in the funds so received by him.
The employe having converted to his own use and embezzled large sums of money, aggregating more than $1,600, an action was brought against the sureties on the bond to recover the amount *168 thereof. On the trial of the case in the court of common pleas a verdict was directed for the plaintiff, at the close of all the evidence, for the amount of the bond. Error is prosecuted to this court, the errors relied on being the introduction of incompetent evidence and the action of the court in directing the verdict.
One of the exhibits which was offered in evidence was manifestly not admissible, but no exception was taken to its admission, and the action of the court below, therefore, can not be relied on as error in this court.
The important question for determination in this case is whether the trial court was authorized to direct a verdict in favor of the plaintiff. Evidence wás offered tending to show that in 1910 or 1911 the agent, Dieterle, had received and appropriated to 'his own use from $250 to $300 of his employer's money. Captain Jex, one of the bondsmen, had no knowledge whatever of this condition of affairs, but it was known to the employer. The amount of that defalcation was subsequently made good by Dieterle. The evidence tends to show that in 1912 Dieterle again misappropriated funds of his employer, but on this occasion the facts were communicated to Captain Jex but were not known to the company. In the years 1913 and 1915 the amounts embezzled increased very largely, and late in the year 1915 the employer, becoming aware of the situation, caused the arrest of Dieterle, and he was tried and convicted of embezzlement. The employer notified the two sureties of the defalcation in 1915, and subsequently brought this action on the bond.
*169 It is urged as a defense by the sureties that the company fraudulently, concealed the information which it had as to the defalcations of-Dieterle and that by reason of such action of the employer the sureties are released from the indemnifying bond. The evidence contained in the bill of exceptions .is not.very clear or explicit as to precisely the time when these various defalcations occurred, nor as to the precise amounts thereof, except that it appears that the amount which he had misappropriated and which remained unpaid in November, 1915, was $1645.
The sureties on the indemnifying bond were entitled to the exercise of the utmost good faith on the part of the employer of Dieterle, and, if such good faith' was not exercised, we apprehend the true rule of law ' is that the sureties should be discharged.
The law applicable to such cases is stated in 2 Brandt on Suretyship and Guaranty (2 ed.), Sections 423 and 424, to be that where there is a continuing guaranty for the honesty of a servant, if a master discovers that the servant has been guilty of dishonesty in the course of the service and continues him in such service without the knowledge of the guarantor, the guarantor is released from the liability to make good any loss which may arise from the dishonesty of the servant during the subsequent service, "and the employer is held to impliedly stipulate that he will not knowingly retain the employe in his service after a breach of the guaranty justifying -his discharge, and if he does do so, without the knowledge or consent of the surety, the surety will be exonerated.
*170 The learned author states in Section 423 that if the dishonesty had existed before the surety became bound, and the master had concealed it, the surety would not have been liable, and that the cases are the same in principle.
To the same effect are Estate of Rapp v. The Phoenix Insurance Co., 113 Ill.; 390; Delbridge et al. v. Lake, H. P. & C. B. & L. Assn., 82 Ill. App., 388, and Roberts et al. v. Donovan et al., 70 Cal., 108.
The case of Watertown Fire Insurance Co. v. Simmons et al., 131 Mass., 85, has 'been thought by some authorities to lay down a different rule, but a careful examination of the case will show that the court held that, however irregular or negligent the agent had been, he was not guilty of any defalcation or other dishonest or fraudulent conduct, and by reason thereof no duty rested on the creditor to use active diligence to protect the sureties, and that they were not discharged. A fair implication to be drawn from the opinion of the court in the case just cited leads to the conclusion that the Massachusetts court, if it had found that the agent was guilty of fraudulent or criminal conduct and that this fact was known to the employer and concealed from the sureties; would have held that the sureties were discharged.
It has been held in Ohio in Dinsmore, Trustee, v. Tidball et al., 34 Ohio St., 411, thatdf an employer obtains security for the faithful performance of the duties of an agent, knowing at the time that such agent is a defaulter, and fails to disclose the fact to the surety, thereby inducing the surety to execute the bond of indemnity, then such employer *171 can not recover of the surety. See also Smith v. Josselyn, 40 Ohio St., 409. In this case the trial court had directed a verdict for the plaintiff against the sureties after there had been some evidence tending to show that before the giving of the bond sued upon, -the agent had been guilty of culpable carelessness while in the employ of the plaintiff and that the plaintiff had knowledge of his conduct and had failed to communicate the same to the sureties. The supreme court held under these circumstances that these were matters of fact which should have been left to the jury to be determined.
While these Ohio cases arose where the fraudulent or criminal conduct occurred before the giving of the bond, they are the same in principle as if the fraudulent or criminal conduct occurred thereafter, providing the facts were known to the employer and concealed from the surety.
In view of the fact that the judgment must be reversed, and the case remanded for a retrial, we will follow our usual practice and not go into a review of the evidence, but content ourselves with stating that sufficient evidence was introduced -to require a submission of the case to the jury for its determination.
The judgment will be reversed and the cause remanded for new trial.
Judgment reversed,- and cause remanded.
Chittenden and Kinkade, JJ., concur.