### Johnson Oil Refining Company, Appellant, v. C. E. Smoot, Appellee.

### Gen. No. 7,970.

1. PLEADING—*right of plaintiff, under leave to reply double, to abide by demurrer to part of plea while filing replication to another part thereof.* Where a demurrer to a plea, grounded upon the theory that it attempted to plead two distinct defenses, was overruled, plaintiff could not, under leave to reply double, elect to abide his demurrer as to one of such defenses and join issue as to the other.

2. SAVING QUESTIONS FOR REVIEW—*failure to assign error upon overruling of demurrer to plea as precluding reliance upon defectiveness thereof.* The validity of a plea is not before the court,

on appeal, where plaintiff fails to assign error upon the order of the trial court overruling his demurrer thereto.

3. GUARANTY—*when signer of employee's fidelity bond assumes liability of guarantor.*  Where a contract between principal and agent provided that the agent would furnish a personal bond in a named sum "guaranteed by some responsible person * * * insuring" the principal against the fraud or dishonesty of the agent, etc., and against loss by reason of the agent's violation of the terms of the contract, one who signed such a bond became a guarantor of the performance of all the terms of the contract, and his obligation was a continuing one, covering the liability of the principal for a succession of periods.

4. GUARANTY—*duty of obligee of fidelity bond to notify surety of breach by principal warranting discharge before continuing him in service.*  There is an implied undertaking upon the part of the obligee of a bond guaranteeing the fidelity of an employee that he will not knowingly retain such employee in his service after a breach of the guaranty justifying his discharge, and if he elects to so retain him, without the guarantor's consent, the latter will not be liable in the event of a further breach.

5. GUARANTY—*right of surety of employee's fidelity bond to release after failure of obligee to notify of principal's default, as affected by provision of bond against release because of forbearance to enforce default.*  A provision in a bond guaranteeing the fidelity of an employee that no forbearance on the part of the obligee towards the principal in respect of his failure to perform any of the obligations of his contract or the bond should operate to release the surety thereunder, does not prevent exoneration of the surety by reason of the fact that the obligee retained the principal in his service after a breach of the guaranty justifying his discharge, without notifying the surety of the default.

6. WORDS AND PHRASES—*forbearance defined.*  Forbearance means delay in enforcing rights, and includes the act by which a creditor waits for the payment of a debt by his debtor after it becomes due.

7. GUARANTY—*when allowance for attorney's fees properly omitted from judgment against surety under fidelity bond.*  In an action upon a bond guaranteeing the fidelity of an employee it was not error to refuse to allow plaintiff attorney's fees, in addition to the amount in which the surety was found indebted under the bond, where the undertaking of the guarantor in that behalf was to indemnify the obligee against any loss, etc., including attorney's fees, which the obligee "may pay or sustain or be put to" through a breach of the bond, where it was admitted that no counsel fees were due at the time the suit was brought.

Johnson Oil Refining Co. v. Smoot, 242 Ill. App. 438.

Appeal by plaintiff from the Circuit Court of Vermilion county; the Hon. JOHN H. MARSHALL, Judge, presiding. Heard in this court at the April term, 1926. Affirmed. Opinion filed November 6, 1926.

LOVE & KILGORE, for appellant; CHARLES Y. FREEMAN, of counsel.

JONES, McINTIRE & JONES, for appellee.

MR. PRESIDING JUSTICE CROW delivered the opinion of the court.

On this appeal there is no controversy as to the facts. The action was begun to recover the sum of $589.99 and attorneys' fees upon the facts herein stated. A judgment was rendered by the court trying the case without a jury.

Lawrence Harry began work for appellant under a contract as one of its agents selling oil and its products. To secure the performance of the contract he entered into bond in the sum of $2,000 with appellee as surety. It is provided in said bond that if the said Lawrence Harry shall, so long as he continues in the employ of the plaintiff, faithfully, honestly and diligently perform all of his duties as such agent and shall duly account to plaintiff or its successors and assigns for all moneys, merchandise and property whatsoever, the said Lawrence Harry may have had or has and shall, when required, deliver all of said moneys, merchandise and property to the plaintiff and shall at all times keep the plaintiff indemnified against all loss, costs, damages and expenses, including attorneys' fees, which the plaintiff may pay or sustain or be put to by reason of its taking the said Lawrence Harry into its employ, or by reason of any account, embezzlement, mismanagement, neglect or default of the said Lawrence Harry while in the employ of the plaintiff and shall fully perform all the obligations of his contract, then this obligation to be void.

It is averred in the declaration that the said Lawrence Harry entered upon his employment as such agent, and continued to act as such agent of the plaintiff until the third day of March, 1924, at which time it was discovered by the plaintiff that the said Lawrence Harry was in default of the discharge of his duty as agent of the plaintiff on his failure to account for moneys received by him in the course of such employment in the sum of $589.99, an itemized statement of which is attached and marked Exhibit "C" to the said declaration; that thereupon on the said date mentioned, the plaintiff demanded that the defendant, Lawrence Harry, pay to it the sum of five hundred eighty-nine and 99/100 ($589.99) dollars and that the said Lawrence Harry refused to pay same and that thereupon he checked out on the said date as the agent of the plaintiff and though often requested since, he has failed and refused to pay the said sum or any part thereof; that on like demand, the defendant, C. E. Smoot, surety on the said bond, has failed and refused to pay the said money or any part thereof; that by reason of the foregoing, it has been compelled to and has employed attorneys at law to bring suit upon the bond herein set out against the principal and surety on the said bond and that in relation thereto, it has paid or become liable to pay the attorneys so employed the sum of one hundred ($100) dollars in its attempt to enforce the bonds and the obligations of the principal and surety hereinbefore referred to, to the damage of plaintiff in the sum of seven hundred fifty ($750) dollars, whereby an action has accrued to the plaintiff to demand of the defendants the sum of two thousand ($2,000) dollars.

To the second amended declaration upon which the cause was heard, defendant filed three pleas. The first was *nil debet*, the second *non damnificatus*. The third plea averred that while the said Lawrence Harry was in the employ of the plaintiff as its agent on, to

wit, December 3, 1923, the plaintiff caused an audit to be made of the accounts of the said Lawrence Harry with the plaintiff and discovered the said agent Lawrence Harry was then and there short and in default in his said accounts with the plaintiff in the sum of $40.50, yet the plaintiff well knowing of the shortage and default did not notify the surety, the defendant, C. E. Smoot, thereof, but retained the said Lawrence Harry in its employ without the consent of the defendant, C. E. Smoot, surety on said bond, by reason whereof the surety was released and discharged from any and all liability on said bond after the date of the said audit on, to wit, December 3, 1923; that the defendant paid to the plaintiff the said sum of $40.50 prior to the commencement of his suit, and that the balance of the shortage and default in the said declaration occurred after the date of said audit of December 3, 1923.

To the last plea the plaintiff filed a demurrer, and for special ground alleged that said plea "sets up two distinct defenses, one by way of payment and the other by way of bar for the alleged laches of the plaintiff." The demurrer to the plea having been overruled the record shows "leave is granted plaintiff to reply double and plaintiff elects to stand by its demurrer as to said plea except as to forty dollars alleged payment and as to that it files its replication." The replication is:

"And the plaintiff as to that part of the plea of the defendant by him thirdly above pleaded by way of payment, says, that it, the plaintiff, by reason of anything in that plea alleged, ought not be barred from having its action aforesaid, because it says that the defendant did not pay to the plaintiff the said sum of Forty Dollars and Fifty Cents ($40.50) in his said third plea in that behalf mentioned in manner and form as the defendant has in that plea alleged."

The court heard the evidence and found for the plaintiff for the sum of $40.50 and rendered judgment for that sum and for costs, to reverse which this appeal is prosecuted.

The evidence is in small compass and shows substantially the following facts: Lawrence Harry was appointed agent for plaintiff and entered upon his duties as such, in the sale of oil, gasoline and other articles usually sold at such stations. The appointment was made on the third day of October, 1922. On the third day of December, 1923, Alsen, an auditor for the plaintiff auditing the account of Harry, ascertained therefrom that he was short in his accounts at that time in the sum of $40.50. No notice of that shortage was sent to Smoot. Another audit was made on the third day of March, 1924. At that time the audit disclosed that Harry was short in his accounts in the sum of $468, not including money advanced to him by his employer. The fact of this shortage was communicated to Smoot by letter dated March 11, 1924, after Harry was discharged. The letter contained the following paragraphs:

"We hope Mr. Lawrence Harry will arrange to pay this shortage himself, however, we are informing you of the shortage at this time so that you may use your influence in getting him to pay it himself, thereby making it unnecessary for us to call on you as his bondsman for payment.

"Trusting we may count on your co-operation in the collection of this shortage we remain."

To this letter Smoot replied under the date of March 16, 1924:

"As I have been away from home for the last three days I did not have a chance to answer your letter of March 11th, sooner.

"I have not got to see Mr. L. Harry in regard to the shortage that is due you but as I see it, there is only

one way to handle a case of this kind and that is by way of the law, whatever may be the result.

"I assure you I will cooperate with you in every way about this matter and hope you will appreciate my position to such an extent that you will lend a hand to see that all concerned will be justly dealt with.

"If the outstanding accounts can be collected, it will reduce the shortage about $100. Will you notify them not to pay their accounts to Mr. Harry as he is not in your employ.

"If I have to lose this money I expect to make Lawrence Harry suffer for it and through your company is the way I will have to go."

The record presents an anomalous situation, arising, as we think, out of a misapprehension of the pleadings. To defendant's third plea of release or discharge from liability demurrer was overruled. The ground of demurrer was that the plea was double in that it attempted to plead two distinct defenses—one in bar by delay and the other by payment. The demurrer having been overruled, plaintiff asked and obtained leave to reply double. Thereupon it elected to abide its demurrer as to said plea except as to $40 alleged payment and as to that protested the bar and denied the payment as alleged. The misapprehension was as to the nature of the plea. Defendant's theory of the law governing his case was that, being a guarantor in an indefinite and continuing contract of guaranty, and the guarantee having failed to notify him of a breach ascertained by it on the third day of December, 1923, $40.50 being then due, he was discharged from all liability on his contract for damages occurring after that time. But under the rules of good pleading, it was necessary to aver payment, or a readiness to pay that amount. Under his theory of legal right that was the limit of his responsibility under his contract.

Upon hornbook learning relating to common law pleading the plea must extend to the whole count. If it answered only a portion, but professed to answer the whole, judgment *nil dicit* should have been entered against him because he had not effectually answered the whole count or declaration, or so much of it as it purported to answer if purporting to answer part. It is apparent, therefore, that the plea did answer the whole declaration. The demurrer to it having been overruled, plaintiff could not abide part and join issue on part. Plaintiff, appellant here, has not assigned error upon the court's ruling on its demurrer. The plea being good or bad in its entirety, and no error assigned upon the court's judgment as to its validity, we are not permitted on appeal to review its ruling in that respect.

Concisely stated, the question presented upon the record is, Was defendant liable for a greater sum than that for which judgment was rendered? Appellee's contention at the trial was that he was not, because there had been a previous default by the principal to pay to plaintiff the sum of $40.50 and that plaintiff did not notify him of that default, but permitted the principal to continue to act as its agent three months longer when the shortage amounted to $468. Appellant contests appellee's contention on the ground that under the instrument in suit the law imposed no duty to notify defendant of default. It insists that it was the duty of the surety to ascertain the condition of the principal's account and therefore notice to him must be imputed.

In determining the question of liability it is necessary to ascertain the status created by the transaction between parties. A contract of 23 paragraphs was entered into between appellant and Lawrence Harry by which he became the sales agent for it. By paragraph 15 it was stipulated among others that agent will furnish a personal bond for $2,000, guaranteed by some

responsible person satisfactory to the company, insuring the company against the fraud or dishonesty of the agent, his agents, or servants with respect to the property or proceeds thereof belonging to the company in his own or their hands under the terms of this agreement, or against any loss or damage which the company may suffer by reason of the violation by the agent of any of the provisions of this agreement. Official audits of the station will be made and net commissions will be figured as follows: Unpaid balance due general office from Johnson Oil Refining Company, Sadorus, Illinois, deducted from merchandise inventory plus cash in bank.

By other paragraphs, sales made by the agent or his agents were required to be paid for cash on delivery; cash received from sales, collections or otherwise, by the agent, shall be deposited in the bank at Sadorus to the credit of the company in an account to be opened in its name, from which the agent "shall possess the right to draw the funds so deposited to cover invoices to the Johnson Oil Refining Company at Sadorus and for commissions earned and due the agent," with restrictions now immaterial, contained in the clause. All expenses of sale and handling shall be borne by the agent who shall furnish all equipment necessary for carrying on the business, with exceptions stated, the agent to be responsible for all repairs and renewals to entire equipment used by the agent at his own expense. A further requirement is, furnishing weekly inventories of gasoline and kerosene, lubricating oils and grease at the end of each month. The agent was required to reimburse the company for any loss by sales made for unauthorized prices or on credit or by any other act or omission by the agent, his agents or employees. There are other clauses in the contract which might involve pecuniary responsibility on the part of the agent.

The instrument upon which suit was brought bears the same date as the contract, October 31, 1922. The

contract is expressly referred to in the bond and made part of it. The nature of the undertaking of appellee is fixed by the stipulation of the parties and by the nature of the instrument expressing it. We cannot impute to the parties ignorance of the meaning and legal effect of the terms they have employed. While there is nothing in the record disclosing the author of the contract and the bond, it is not an unwarranted assumption that appellant prepared both. The provisions in the contract that the agent will furnish a personal bond "guaranteed by some responsible individual" must be accepted as the expression of its view of the extent of the obligation assumed by each person. When appellee signed the instrument, therefore, he signed it as a guarantor, of the performance of all the terms of the written contract between defendant and Harry, its agent. It was a continuing guaranty for it contemplated liability of the principal for a succession of periods.

In support of the judgment of the circuit court and its holding on propositions of law, appellee relies upon *Estate of Rapp v. Phoenix Ins. Co.*, 113 Ill. 390. In that case two principal questions were determined. One was the liability of the estate of the guarantor, Rapp, for defaults occurring after his death; the other, whether he or his estate was bound for defaults of the principal subsequent to that first ascertained by the employer, and of which it did not notify the guarantor. The first question is not, the second is, now involved.

The facts were: that the agents faithfully made monthly settlements with the Insurance Company for 10 months after the death of Rapp and paid to it all that was due to January 1, 1883; that they failed to make settlement for the months of January and February, 1883; that the Insurance Company did not notify the executors of Rapp of the failure of the agents to make the settlement for January, until after the failure to make the February settlement. The entire deficit

for the two months was $260, $188.90 of which was for the month of January. The circuit court allowed the amount due for January and refused to allow that for February. This court affirmed the judgment, no opinion being published. The case went to the Supreme Court upon a certificate of importance, and the judgment was affirmed. The court on a state of facts identical with this case, by Mr. Justice Mulkey, said:

"We are of opinion the court also ruled properly in refusing to allow appellee the amount of deficit for the month of February,—not on the ground, however, the bond had become *functus officio,* but because the company in retaining in its service J. B. Booker & Co. after notice of the January default, which was just cause for discharging them, violated a duty which it impliedly assumed to Rapp and his legal representatives on accepting the bond. When the employer of a clerk or other agent takes from another a bond of indemnity, or other instrument, guaranteeing the honesty and fidelity of such clerk or agent while in the service of the employer, the latter impliedly stipulates that he will not knowingly retain such clerk or agent in his service after a breach of the guaranty justifying his discharge, and that in the event he does so without the surety's consent, it is to be at the employer's own risk. This is not only fair dealing and common honesty, but it is a rule of law also. The principle here announced is well established by the authorities. *Phillips v. Foxall,* 27 L. T. (N. S.) 231; 7 L. R. Q. B. 666; *Anderson v. Aston,* 28 L. T. (N. S.) 35; 8 L. R. Exch. 73.

"Holding, as we do, the ruling of the trial court was correct in allowing the claim for the amount it did, it follows the Appellate Court properly affirmed the order." Dickey and Craig, JJ., dissented upon the ground alone that the death of Rapp terminated his obligation as guarantor, and therefore his estate was not liable. But the point here under consideration was by their silence approved.

The legal principle was approved and applied in *Delbridge v. Lake, H. P. & C. B. & L. Assn.*, 82 Ill. App. 388, and in *Donnell Mfg. Co. v. Jones*, 49 Ill. App. 327. See also *Haven v. Chicago Sash, Door & Blind Co.*, 96 Ill. App. 92, 103.

It is insisted by counsel for appellant that unless the retention of the money shown by the first audit to be due the company was of such nature as to be the subject of a criminal prosecution or the result of moral turpitude, it was not necessary to notify defendant, the guarantor. There are cases holding that to discharge a surety or guarantor where the principal is in default, the default must partake of the nature of a crime or moral turpitude. In 32 Cyc. 79, the general rule is stated:

"Thus it would seem that on one hand there is no active duty whatever on the employer either to notify the sureties or to dismiss the agent or employee for a mere default which does not in itself involve dishonesty, or to give notice of a mere failure to report or account punctually or turn over or remit funds, under the terms of the contract, the performance of which is secured unless there is knowledge of an actual defalcation, while at the same time it is recognized that mere incompetency or negligence on the part of a servant may be so gross or habitual that good faith to the sureties would require the master to discharge the servant or at least give notice to the sureties; or, as has been also held, the rule applies to any breach of the employment, whether by dishonesty or not, which might have justified the dismissal by the employer or master, so that a plea showing a breach, prior to that sued for, without notice to the surety, and for which he might have required dismissal, is good."

In support of the last statement, *Sanderson v. Aston*, L. R. 8 Exch. 73, is cited, as in *Rapp* case, *supra*. In note 65 to the text, it is said, citing the Illinois cases, *supra*, that they support a broader rule than that

generally prevailing. Many other cases are cited in support of the more liberal rule toward sureties. A further and cogent reason for enforcing the principle is the obligation resting upon an obligee or party to a contract to do nothing that will enhance the damages of an obligor, but on the contrary to minimize them. He may not lie in wait until damages are increased to his profit and successfully invoke the arm of the law to aid him.

We are of the opinion, therefore, that the court did not err in holding the first proposition of law embracing that defense tendered by defendant on ground urged by appellant. The cases cited by it have all been examined and are clearly distinguishable from this. The *Rapp* case on this point met the approval of the whole court. Its authority is not impaired by reason of its being arrayed with the decisions of other courts constituting, though it may be, a minority of the courts of the country.

It is contended by appellant that even if notice was required to be given under the law applicable to the bond the duty was obviated by the last clause of the bond, following:

"Provided that any forbearance on the part of the Company, its successors or assigns, toward the Agent in respect to his failure or neglect to perform any of the obligations of his said contract of employment, or of this bond, shall not in any wise release or exonerate in whole or in part the Surety in respect of his liability under this bond."

"Forbearance" does not bear the relation to appellant's inactivity that it contends for. As defined by the authorities cited by it, the term means "delay in enforcing rights. The act by which a creditor waits for the payment of a debt due him by the debtor after it becomes due." The complaint made against appellant by the surety is, not any delay in enforcing its rights, against its agent, but its failure to notify the surety

that any right had arisen that might be enforced. If it had notified the surety of the default and he had not demanded immediate action, he would not now be complaining of delay, or any indulgence granted the agent. There is nothing in that clause militating against the plea of want of notice to appellee of the agent's default. The court did not err, therefore, in holding the second proposition of law against the contention of appellant.

At the trial counsel for plaintiff admitted that no attorney's fees were due at the time the suit was brought. If they may be recovered under the provision of the bond, the court did not improperly refuse to allow them. Nor is appellee bound upon any principle of waiver upon the evidence appearing in the record.

Finding no substantial error in the record the judgment of the circuit court is affirmed.

*Affirmed.*